# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR DUANE JACKSON, et al., | Case No. 1:13-cv-01055-LJO-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATION RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| v. | |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | (ECF Nos. 25, 32, 33, 36) |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

## I.

## PROCEDURAL HISTORY

Plaintiffs Arthur Duane Jackson, Leonard M. Lujan, Marcus Jackson, Rodney Taylor, Lacedric Johnson, L.T. Belton, and Norman Johnson filed this civil rights action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1981 on July 9, 2013.  (ECF No. 1.)  Plaintiffs bring this action against Defendants Edmund G. Brown, Jr., Matthew Cate, Jeffrey Beard, P.D. Brazelton, and James D. Hartley for deliberate indifference in violation of the Eighth Amendment, racial discrimination in violation of the Fourteenth Amendment and 42 U.S.C. § 1981, and against the individual defendants and Defendants State of California, California Department of Corrections and Rehabilitation ("CDCR"), and Pleasant Valley State prison for negligence under state law. Plaintiffs are seeking monetary damages and declaratory and injunctive relief.

Defendants filed a motion to dismiss on September 25, 2013.  (ECF No. 15.)  Plaintiffs

1

1  filed a first amended complaint on October 16, 2013. (ECF No. 16.) On October 18, 2013, an
2  order issued denying Defendants' motion to dismiss as moot. (ECF No. 24.)

3    On November 4, 2013, Defendants filed a motion to dismiss pursuant to Federal Rule of
4  Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 25.) Plaintiffs filed an opposition
5  to the motion and request for judicial notice on January 22, 2014.[1] (ECF No. 32, 33.) On
6  February 12, 2014, Defendants filed a reply. (ECF No. 36.)

7    The Court heard oral arguments on February 19, 2014. (ECF No. 36.) Counsel Jason
8  Feldman and Mark Ozzello appeared for Plaintiffs and Counsel Jon Allin appeared for
9  Defendants. Having considered the moving, opposition and reply papers, and arguments
10 presented at the February 19, 2014 hearing, the Court issues the following findings and
11 recommendation recommending that Defendants' motion to dismiss be granted in part and denied
12 in part and that Plaintiffs be granted an opportunity to file an amended complaint to cure the
13 deficiencies discussed below.

14 **II.**

15 **COMPLAINT ALLEGATIONS**

16  Plaintiffs are current or former inmates who allegedly contracted Coccidiododomycosis,
17 commonly known as Valley Fever, while incarcerated at Pleasant Valley State Prison ("PVSP")
18 or Avenal State Prison ("ASP"). (First Am. Compl. 2-5,[2] ECF No. 22.) This action is brought on
19 behalf of three subclasses of Plaintiffs: 1) African-American inmates, 2) inmates over the age of
20 55, or 3) immune-compromised inmates who were incarcerated at PVSP or ASP from July 8,
21 2009 through the present and contracted Valley Fever. (Id. at 7-8.)

---

[1] Plaintiffs' request for judicial notice is denied. Under the Federal Rules a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice may be taken "of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc. 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). However, while a court may properly take notice of a doctrine or rule of law from a prior case, M/V American Queen v. San Diego Marine Const. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983), on a motion to dismiss pursuant to Rule 12(b)(6) review is confined to the complaint and the court typically does not consider material outside the pleadings, U.S. v. 14.02 Acres of Land More or Less in Fresno County, 547 F.3d 943, 955 (9th Cir. 2008).

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

Plaintiffs allege that Valley Fever is a serious infectious disease which is contracted by inhalation of an airborne fungus and is prevalent in the San Joaquin Valley of California. (Id. at ¶ 30.) Epidemiological studies have established that African-Americans, persons over the age of 55, and those in an immune-compromised state are at higher risk for developing Valley Fever. (Id. at ¶ 34.)

In June of 1994, the U.S. Centers for Disease Control and Prevention ("CDC") published an article reporting on the impact of Valley Fever in California and that 70% of the reported cases in California arose in the San Joaquin Valley. (Id. at ¶ 38.) In September 1995, the CDCR issued a memorandum describing the illness, its long term effects, and the increased risk of acquiring Valley Fever in the subclasses identified by Plaintiffs. (Id. at ¶ 39.) In September of 1996, an article was published by two doctors from the University of California-San Diego, School of Medicine, commenting on the Valley Fever epidemic of 1991-1993. (Id. at ¶ 40.)

In 1996, the National Foundation for Infectious Diseases held an International Conference on Coccidiododomycosis and published a summary of the articles discussed at the conference. Included in these articles was the "California Health Services Policy Statement on Coccidiododomycosis which stated that from 1991 to 1993 California was spending $60 million in health care costs from Valley Fever infections. The report recognized that Plaintiffs' subclasses were at a higher risk for developing Valley Fever. The report also identified the areas that house PVSP and ASP as the most likely place to generate Valley Fever infections and recommended preventive measures, such as using spherulin skin tests to identify those not vulnerable to infection, the use of dust control measures, masks and wetting of the soil. (Id. at ¶ 41.)

In 2006, the California State Public Health Department issued a report addressing Valley Fever at PVSP and ASP and made suggestions to reduce the amount of Valley Fever infections experienced by individuals in Plaintiff's subclasses. These suggestions were not implemented by the CDCR. (Id. at ¶ 45.)

In 2007, an article entitled "Coccidioidomycosis in California State Correctional Institutions" was published, which pointed out that construction of new prisons in affected areas

had led to a marked increase in the number of Valley Fever cases and identified the infection rates at these facilities. (Id. at ¶ 71.) In June 2007, the Statewide Medical Director for California Prison Healthcare Services submitted a report to the federal receiver entitled "Recommendations to Coccidioidomycosis Mitigation in Prisons in the Hyperendemic Areas of California." The reported indicated that Defendants were recommending certain additional measures for immediate implementation, including environmental mitigation techniques at PVSP and ASP, deferring any new construction that would result in additional prisoners being housed in the hyperendemic areas, providing indoor recreation areas for inmates to use during high wind/dust events, and continuing to exclude certain inmates from facilities in these areas. (Id. at ¶ 71.)

On April 29, 2013, the Federal Receiver, J. Clark Kelso, issued a Cocci Exclusion Policy which was amended on May 1, 2013, directing PVSP and ASP to exclude all high risk inmates, including African-Americans, inmates over the age of 55, and those who were immune compromised. (Id. at 72.)

Plaintiffs in this action allege that the defendants have been aware, since at least 2006, that Valley Fever affected those inmates in Plaintiff's subclasses and have taken some steps to reduce Valley Fever in the inmate population, but those efforts have been unsuccessful. (Id. at ¶ 48.) Plaintiffs contend that Defendants have failed to take action to protect individuals in Plaintiffs' subclasses and they are seeking future health care and health costs after they are released from custody and compensatory damages. (Id. at ¶¶ 44, 47.)

**Arthur Duane Jackson**

Plaintiff A. Jackson, an African-American inmate serving a sentence of 43 years to life, was transferred to PVSP around July 2009. (Id. at ¶¶ 3, 49, 51.) At the time of his transfer, Plaintiff A. Jackson was in good health. Plaintiff A. Jackson experienced symptoms of Valley Fever in December 2011, and was temporarily blind as a result of the infection. Plaintiff A. Jackson received treatment when he became ill, but his condition worsened and he developed pneumonia. (Id. at ¶ 50.) Plaintiff A. Jackson continues to suffer from the disease. He is receiving medication and is partially blind in his left eye due to the Valley Fever infection and suffers from severe headaches on a daily basis. (Id. at ¶ 51.)

4

**Leonard M. Lujan**

Plaintiff Lujan is a 62 year old former inmate who was diagnosed with cancer prior to contracting Valley Fever in November 2010 while housed at ASP. (Id. at ¶¶ 4, 52.) Following his release from custody, Plaintiff Lujan continues to experience complications of Valley Fever such as pain, a black spot on his lung, difficulty walking, constant fever, cold sweats, and difficulty breathing and sleeping. (Id. at 53.)

**Marcus Jackson**

Plaintiff M. Jackson is an African-American former inmate who was ordered into the custody of the CDCR in July 2009. (Id. at ¶¶5, 54.) Plaintiff contracted Valley Fever while housed at PVSP. (Id. at 54.) Following his release from custody, Plaintiff M. Jackson is experiencing panic attacks, mental stress, sleeplessness, nausea, inactivity, and vomiting. (Id. at ¶ 55.)

**Rodney Taylor**

Plaintiff Taylor is an African-American former inmate who had diabetes at the time he was transferred to ASP. (Id. at ¶ 6.) Plaintiff Taylor lost twenty to thirty pounds in three weeks after he contracted Valley Fever at ASP. (Id. at ¶ 56.) Following his release from custody, Plaintiff is experiencing extreme headaches, difficulty walking, lack of endurance, frequent colds, fatigue, and back pain. (Id. at ¶ 57.)

**Lacedric Johnson**

Plaintiff L. Johnson is an African-American inmate who is not scheduled for release until 2027. (Id. at ¶¶ 7, 58.) Plaintiff L. Johnson suffers from lung damage, fever, sweats, headaches, loss of concentration, aching joints, severe weight swings, loss of body hair, lightening of skin pigmentation, rash, dark spots on his skin, shortness of breath, fatigue, sleeplessness, back pain and side effects from his prescribed medication as a result of Valley Fever. (Id. at ¶ 58.)

**L.T. Belton**

Plaintiff Belton is an African-American inmate who is scheduled for release in December 2013. (Id. at ¶¶ 8, 59.) Plaintiff Belton suffers from headaches, fatigue, difficulty sleeping, joint pain, shortness of breath, numbness on bottom of foot, and difficulty with bowel movements. (Id.

5

at ¶ 59.) Plaintiff Belton is undergoing treatment for Valley Fever and taking medication daily. (Id. at ¶ 60.)

**Norman Johnson**

Plaintiff N. Johnson is an African-American inmate who was in relatively good health at the time he was transferred to ASP in May 2012. (Id. at ¶¶ 9, 61.) Plaintiff N. Johnson is scheduled to be released from custody in July 2017. Plaintiff N. Johnson experienced chills, lack of appetite, night sweats, chest pain, shortness of breath, muscle and joint pain, fever, and allergies as a result of his Valley Fever. (Id. at ¶ 62.)

Plaintiffs bring this action alleging deliberate indifference in violation of the Eighth Amendment; racial discrimination in violation the Fourteenth Amendment; racial discrimination in violation of 42 U.S.C. § 1981; and state law claims of negligence.

## III.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

## IV.

## DISCUSSION

Defendants bring this motion to dismiss on the grounds that 1) the conclusory allegations against defendants in their individual capacities do not state a claim for relief; 2) there are no damages available against defendants in their official capacities; 3) Plaintiffs have failed to plead

compliance with the Government Claims Act; 4) the State and CDCR are protected by Eleventh Amendment immunity; and 5) Defendants are entitled to qualified immunity. (Mem. of P. & A. in Supp. of Mot. to Dismiss under Rule 12(b)(6) 2, ECF No. 25-1.)

### A. Individual Capacity Claims

Defendants argue that the complaint does not state a claim against the individual defendants for deliberate indifference in violation of the Eighth Amendment, and therefore, must be dismissed. Defendants contend that Plaintiffs have failed to make specific allegations against any named defendant and merely recite general responsibility of their offices. (ECF No. 25-1 at 3.) Additionally, Defendants contend that the complaint states that Defendants have taken steps to reduce the incidence of Valley Fever in the prison population, but complain that those steps have been ineffective. (Id. at 4.)

Plaintiffs oppose the motion contending that the first amended complaint is replete with allegations demonstrating that the individual defendants were aware of the serious medical risks to the plaintiffs due to their susceptibility to Valley Fever and did not act to protect them. (Opp. of Pls. to Mot. of Dfs. To Dismiss the First Am. Compl. 14, ECF No. 32.) Defendants reply that the complaint does not make any attempt to describe the individual defendant's knowledge, authority to act, or personal link to any act or failure to act. (Reply 3, ECF No. 36.)

Plaintiffs' amended complaint merely states that Edmund G. Brown, Jr. is the Governor of California. (ECF No. 22 at ¶ 12.) Plaintiffs fail to set forth any factual allegations to link Defendant Brown to any responsibility for the actions of the other defendants. Governor Brown cannot be held liable for the failure of prison officials to act merely by virtue of his office. Accordingly, Plaintiffs have failed to state a cognizable claim against Governor Edmund G. Brown, Jr. Defendants' motion to dismiss Governor Edmund G. Brown, Jr. for failure to state a claim should be granted. The Court will next address the individual capacity claims against Defendants Matthew Cate, Jeffrey Beard, P.D. Brazelton, and James D. Hartley.

#### 1. Deliberate Indifference

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman,

7

452 U.S. 337, 347 (1981). To prove a violation of the Eighth Amendment based on prison conditions, a prisoner must show that a prison official deprived the prisoner of the "minimal civilized measure of life's necessities," and (2) the official "acted with 'deliberate indifference' in doing so." Grenning v. Miller-Stout, __ F.3d __, 2014 WL 169657 (9th Cir. 2014) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002)). In order to find a prison official liable under the Eighth Amendment for denying humane conditions of confinement within a prison, the official must know "that inmates face a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

Plaintiffs contend that in 1995 the CDCR circulated a memorandum describing Valley Fever, its long-term effects, and the increased risk of acquiring the disease in Plaintiffs' subclasses. (ECF No. 22 at ¶ 39.) In 2006, the federal receiver was aware that the California State Health Department issued a report addressing Valley Fever and suggesting the implementation of environmental mitigation measures at PVSP and ASP to reduce the cocci spores in the ambient air to reduce the number of infections experienced by Plaintiffs' subclasses. (Id. at ¶ 45.) The defendants had that authority to implement these changes, but the great majority of the changes were not implemented. (Id. at ¶ 70.) In June 2007, the Medical Director for California Prison Healthcare Services submitted a report to the Federal Receiver on recommendations for Valley Fever mitigation in prisons in the hyperendemic area of California. The report recommended immediate implementation of environmental mitigation techniques for prisons in the hyperendemic area. (Id. at ¶ 71.)

At the pleading stage, the complaint sets forth sufficient factual allegations to state a plausible claim that Defendants Matthew Cate, Jeffrey Beard, P.D. Brazelton, and James D. Hartley were aware that African-American inmates, inmates over 55 years of age, and inmates with compromised immune systems had a significant risk of contracting Valley Fever and failed to take reasonable measures to abate the risk. (Id. at ¶¶ 14, 15, 16, 17, 39, 45, 46, 47, 48, 70, 71.)

During the hearing, Defendants argued specifically the complaint was insufficient in respect to the claims against Defendant Jeffrey Beard because he has only been in his current position since 2012. However, Plaintiffs claims encompass July 8, 2009 through the present, (id.

at ¶ 22), and the allegations that Defendant Beard is responsible for the health and welfare of the plaintiffs and the operation of the California State prisons and knew of the substantial risk to the plaintiff's subclasses, (id. at ¶ 15), is sufficient to state a claim given the low pleading standard which merely requires factual allegations to state a plausible claim for relief.[3] Similarly, Plaintiffs' allegations regarding the positions occupied by the individual defendants and their responsibilities within the prison system are sufficient at the pleading stage to link them to the failure to act to protect Plaintiffs from the risk of contracting Valley Fever.

Defendants also argue the first amended complaint does not state a claim for deliberate indifference because Plaintiffs admit that steps were taken to reduce the incidence of Valley Fever in the prison population. While prison officials are not liable if they respond reasonably to a serious risk to inmates, Thomas v. Ponder, 611 F3d 1144, 1150 (9th Cir. 2010), this factual allegation itself does not show that the steps taken here were reasonable to address those inmates at high risk of contracting Valley Fever. Plaintiff's first amended complaint states a cognizable claim against Matthew Cate, Jeffrey Beard, P.D. Brazelton, and James D. Hartley for deliberate indifference in violation of the Eighth Amendment. Defendants' motion to dismiss the Eighth Amendment claim against these individual defendants should be denied.

2. Equal Protection

Defendants move to dismiss Plaintiffs' equal protection claims because the amended complaint merely recites conclusory statements that fail to meet the pleading standard. (ECF No. 25-1 at 4.) Plaintiffs contend that they have stated sufficient factual allegations that African-American inmates were treated differently from similarly situated persons. (ECF No. 32 at 16.) Defendants reply that the complaint alleges a factually neutral policy of housing African-American inmates at PVSP and ASP on the same basis as other ethnicities and Plaintiffs are attempting to state an equal protection claim based upon disparate impact without showing any discriminatory intent. (ECF No. 36 at 3-4.)

---

[3] To the extent that Defendants argue that Defendant Beard was not employed in his current position during the relevant time period that is an issue to be raised on motion for summary judgment and not at the motion to dismiss stage sinc the complaint alleges he was involved.

1    The Equal Protection Clause requires that all persons who are similarly situated should be
2    treated alike. Lee v. City of Los Angeles, 250 F.3d 668, 686 (2001); City of Cleburne v.
3    Cleburne Living Center, 473 U.S. 432, 439 (1985). An equal protection claim may be established
4    by showing that the defendant intentionally discriminated against the plaintiff based on the
5    plaintiff's membership in a protected class, Lee, 250 F.3d at 686; Barren v. Harrington, 152 F.3d
6    1193, 1194 (1998), or that similarly situated individuals were intentionally treated differently
7    without a rational relationship to a legitimate state purpose, Thornton v. City of St. Helens, 425
8    F.3d 1158, 1167 (2005); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

9    Relying on Johnson v. California, 543 U.S. 499 (2005), Plaintiffs contend that the
10   complaint shows that African-Americans were treated differently than other races because the
11   defendants identified and implemented an exclusion policy that singled out African-Americans
12   creating an express racial classification who were denied exclusion based on their race. (ECF No.
13   32 at 16.) However, this action is distinguishable from Johnson.

14   In Johnson, the CDCR was placing inmates in double-cell assignments in the reception
15   center based predominately upon race. Johnson, 453 U.S. at 502. Plaintiff was an African-
16   American male who challenged the policy that assigned him to a cell with another African-
17   American inmate as violating the Equal Protection Clause. Id. at 504. The issue before the court
18   was whether the policy, which was instituted to address racial violence, should be subject to strict
19   scrutiny. Id. at 506. The Supreme Court determined that strict scrutiny applied and the CDCR
20   had the burden of demonstrating that the race based policy was narrowly tailored to address racial
21   violence. Id. at 514.

22   In this instance, the CDCR has not excluded inmates of any race from being housed at
23   PVSP or ASP. (ECF No. 22 at ¶ 77.) In housing inmates in these prisons, the CDCR is treating
24   African-American inmates the same as members of other races. Proof of racially discriminatory
25   intent or purpose is required to allege a violation of the Equal Protection Clause, and the fact that
26   a challenged policy has a disparate impact is insufficient to state a claim. Village of Arlington
27   Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-65 (1977); see
28   N.A.A.C.P., Los Angeles Branch v. Jones, 131 F.3d 1317, 1322 (9th Cir. 1997) (The Equal

Protection Clause is not implicated by classifications with a disparate racial impact in the absence of discriminary intent). Plaintiffs conclusory allegations of racial discrimination are insufficient to state a plausible claim that African-American inmates are being intentionally discriminated against based upon their race.

As Plaintiffs recognize in the opposition to the motion to dismiss, the individuals who are similarly situated to African-Americans in this instance are those who are at high risk of contracting Valley Fever. These are the similarly situated individuals to which the Court looks to determine if African-American inmates are receiving differential treatment.

The first amended complaint alleges that the defendants failed to exclude all high risk individuals from being housed in the endemic area. Plaintiffs contend that Defendants have failed to employ any process to divert members of the high risk groups from assignment to PVSP or ASP. (ECF No. 22 at ¶ 77.) Because African-American inmates were treated the same as all other high risk inmates, the complaint fails to state a cognizable claim for violation of the Equal Protection Clause.

Defendants' motion to dismiss Plaintiffs' equal protection claim should be granted.

3.      42 U.S.C. § 1981

Defendants contend that section 1981 does not apply in this action because the basic elements of a discrimination claim under the section cannot be met. (ECF No. 25-1 at 6.) Plaintiffs argue that section 1981 applies to actions other than those which address the right to make contracts. (ECF No. 32 at 17.) Plaintiffs argue that "Section 1981 provides for the imposition of equality with regard to a myriad of rights." (Id. at 18.)

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Plaintiffs' claim that the language "shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other" extends the protection beyond the

ability to contract without citing any case law to support the position. However, "[s]ection 1981 is not 'a general proscription of racial discrimination ... it expressly prohibits discrimination only in the making and enforcement of contracts.' " Peterson v. State of California Dep't of Corrections and Rehabilitation, 451 F.Supp.2d 1092, 1101 (E.D. Cal. 2006) (quoting Patterson v. McLean Credit Union, 491 U.S. 164, 176 (1989)). "The specific function of section 1981 is to protect the equal rights of all people to make and enforce contracts. Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 475 (2006).

To state a claim under section 1981, "a plaintiff must establish that (1) he or she is a member of a racial minority; (2) the defendant intended to discriminate against plaintiff on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and enforce contracts, sue and be sued, give evidence, etc.)." Peterson, 451 F.Supp. at 1101.

"A contract is necessary to a section 1981 claim." Ennix v. Stanten, 556 F.Supp.2d 1073, 1082 (N.D. Cal. 2008); Domino's Pizza, Inc., 546 U.S. at 476 ("Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights."). A plaintiff cannot state a claim under section 1981 unless he has rights under an existing contract that he is attempting to make and enforce.[4] Domino's Pizza, Inc., 546 U.S. at 479-80.

Plaintiffs are unable to state a claim under 42 U.S.C. § 1981 as they cannot meet the requirement that they are attempting to make or enforce a contract. Defendants' motion to dismiss Plaintiffs claim for racial discrimination in violation of 42 U.S.C. § 1981 should be granted. Further, based upon the allegations in the complaint, the Court finds that the racial discrimination claim under 42 U.S.C. § 1981 is unable to be cured by amendment and therefore, should be dismissed without leave to amend.

---

[4] When the Court inquired during the hearing, Plaintiffs' counsel conceded that they did not cite any case law to support their claim, but merely made the argument based upon the plain wording of the statute. Counsel has a duty to research the claims brought before this court and is admonished that the failure to acknowledge direct contrary case authority is in violation of counsel's professional responsibilities. See Cal. Rules of Prof'l Conduct R. 5-200. Counsel is warned that their credibility with the Court may be damaged when they present arguments that are contrary to law.

### 4. Individual Capacity Claims

Defendants contend that Plaintiffs do not specify whether the claims are brought against the individual defendants in their individual or official capacity and those claims for damages against the individual defendants for damages in their official capacities must be dismissed. (ECF No. 25-1 at 7.) Plaintiffs respond that the individual defendants are not being sued in their official capacities. (ECF No. 32 at 20.)

When a complaint seeking damages under § 1983 does not allege whether the official is sued in his official or individual capacity, the court presumes that the official is being sued in his individual capacity. Shoshone–Bannock Tribes v. Fish & Game Com'n, Idaho, 42 F.3d 1278, 1284 (9th Cir.1984); see also Blaylock v. Schwinden, 863 F.3d 1352, 1354 (9th Cir.1988). In this case, Plaintiffs state they are not pursuing official capacity claims, and therefore the Court finds that the claims in this action are proceeding against the defendants in their individual capacity. Defendants' motion to dismiss claims against the defendants in their official capacities should be granted.

### 5. State Law Claims

Defendants seek to dismiss the state law claims arguing that Plaintiffs have not pleaded compliance with the Government Claims Act. (ECF No. 25-1 at 7.) Plaintiffs contend that the complaint adequately alleges compliance with the Government Claims Act as it states that "Plaintiffs Arthur Jackson, LaCedric Johnson, L.T. Belton, and Norman Johnson have exhausted all applicable and necessary administrative remedies for bringing this action. . . ." ECF No. 32 at 21.)

The California Tort Claims Act[5] requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2010). Presentation of a

---

[5] The Court recognizes that in City of Stockton v. Superior Court, 42 Cal.4th 730, 742 (Cal. 2007), California's Supreme Court adopted the practice of referring to California's Tort Claims Act as the Government Claims Act. However, given that the federal government has also enacted a Tort Claims Act, 28 U.S.C. § 2671, the Court here refers to the Government Claims Act as the California Tort Claims Act in an effort to avoid confusion.

13

1   written claim, and action on or rejection of the claim are conditions precedent to suit. State v.
2   Superior Court of Kings County (Bodde), 90 P.3d 116, 119 (Cal. 2004); Shirk v. Vista Unified
3   School District, 42 Cal.4th 201, 209 (2007).  To state a tort claim against a public employee, a
4   plaintiff must allege compliance with the California Tort Claims Act.  Cal. Gov't Code § 950.6;
5   Bodde, 90 P.3d at 123.  "[F]ailure to allege facts demonstrating or excusing compliance with the
6   requirement subjects a compliant to general demurrer for failure to state a cause of action."
7   Bodde, 90 P.3d at 120.

8   In this instance, Plaintiffs' general allegation that they have exhausted all administrative
9   remedies is insufficient to meet this element of their state law claims.  Accordingly, Plaintiff's
10  negligence claims should be dismissed for failure to state a claim.

11  **B.  Eleventh Amendment Immunity**

12  Defendants contend that the State of California and the CDCR are immune from suit
13  whether Plaintiff is seeking money damages or an injunction.  (ECF No. 25-1 at 8.)  Plaintiff
14  responds that Eleventh Amendment immunity is inapplicable here as supplemental jurisdiction
15  exists.  (ECF No. 32 at 21.)  At the hearing, Plaintiffs conceded that they may not bring suit
16  against the State of California or the CDCR.

17  "The Eleventh Amendment bars suits for money damages in federal court against a state,
18  its agencies, and state officials acting in their official capacities."  Aholelei v. Dept. of Public
19  Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).  "The Eleventh Amendment also bars 'declaratory
20  judgments against the state governments that would have the practical effect of requiring the state
21  treasury to pay money to claimants.' "  North East Medical Services, Inc. v. California Dep't of
22  Health Care Services, 712 F.3d 461, 466 (9th Cir. 2013) (quoting Taylor v. Westly, 402 F.3d 924,
23  929–30 (9th Cir. 2005)).  However, the Eleventh Amendment does not generally bar suits for
24  prospective declaratory or injunctive relief against state officials acting in their official capacities
25  for violations of federal law.  North East Medical Services, Inc., 712 F.3d at 466; Coalition to
26  Defend Affirmative Action v. Brown, 674 F.3d 1128, 1134 (9th Cir. 2012).

27  A state can waive Eleventh Amendment immunity, but the consent must be expressed
28  unequivocally.  Young v. Hawaii, 911 F.Supp.2d 972, 982 (D. Haw. 2012).  California has not

waived immunity for claims brought for injunctive relief or damages pursuant to section 1983. Brown v. California Dep't Corrections, 554 F.3d 747, 752 (9th Cir. 2009).

While Plaintiffs contend that there is supplemental jurisdiction to pursue the claims against the State and CDCR, Plaintiffs seek to bring claims on the theories of negligence and premises liability for failure to operate and maintain the facilities in a manner to insure it was reasonably safe and habitable, and had no defects that constituted a dangerous condition. (ECF No. 22 at ¶ 112.)

Under California law,

> a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Cal. Gov. Code § 835.  However, Government Code Section 844.6 is an exception to liability providing that a prisoner cannot recover from a public entity for an injury that was caused by a dangerous condition of public property. Hart v. Orange County, 254 Cal.App.2d 302, 306 (1967).

The first amended complaint fails to state a claim against Defendants State of California and CDCR. Brown, 554 F.3d at 752 (As an agency of the State of California, CDCR is entitled to Eleventh Amendment immunity).

### C.     Injunctive Relief

Defendants contend that Plaintiffs are seeking to have out of custody Plaintiffs provided with medical care at the States' expense.  Defendants argue that Plaintiffs seek a fund to pay for medical payment and monetary damages are adequate to compensate for their injury. (ECF No. 25-1 at 8-9.)  Plaintiffs contend that they are seeking a court supervised treatment program for Plaintiffs who are no longer in the custody of the CDCR because they need daily medications and regular check-ups to control their disease.  (ECF No. 32 at 22-23.)

"To be entitled to a permanent injunction, a plaintiff must demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction." Independent Training and Apprenticeship Program v. California Dep't of Industrial Relations, 730 F.3d 1024, 1032 (9th Cir. 2013).

In addition, as to those Plaintiffs that are in custody at the time this action is filed, any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

Additionally, injunctive relief is only appropriate if monetary damages or other legal remedies will not compensate the plaintiffs for their injuries. Walters v. Reno, 145 F.3d 1032, 1048 (9th Cir. 1998). While, ultimately, there may be a finding that monetary damages are sufficient to compensate the out of custody Plaintiffs for their injuries, that is not a determination that can be made at this point in the proceedings. Accordingly, Plaintiffs may choose to amend their complaint to seek injunctive relief.

**D.  Qualified Immunity**

Finally, Defendants contend they are entitled to qualified immunity because no case has held that African-Americans, individuals over the age of 55, or immune compromised prisoners had a constitutional right to be excluded from PVSP or ASP by virtue of those classifications. (ECF No. 25-1 at 10.) Plaintiffs respond that it is clearly established that inmates have a constitutional right not to have their serious medical needs disregarded. (ECF No. 32 at 23-26.)

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of

1  which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009)
2  (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but
3  the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 131 S. Ct.
4  2074, 2085 (2011) (citations omitted). To determine if an official is entitled to qualified
5  immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001) overruled
6  in part by Pearson v. Callahan, 555 U.S. 223. The court determines if the facts as alleged state a
7  violation of a constitutional right and if the right is clearly established so that a reasonable official
8  would have known that his conduct was unlawful. Ashcroft, 131 S. Ct. at 2083. "The linchpin
9  of qualified immunity is the reasonableness of the official's conduct." Rosenbaum v. Washoe
10 County, 654 F.3d 1001, 1006 (9th Cir. 2011).

11 Defendants argue that no case had established that the subclasses at issue here could not
12 be housed at PVSP or ASP due to those classifications. However, there does not have to be a
13 case directly on point for it to be clearly established that conduct would violate the Eighth
14 Amendment. Ashcroft, 131 S.Ct. at 2084; Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011).
15 The state of the law is sufficiently clear if it gives fair warning to the official that his conduct is
16 unconstitutional. A.D. v. California Highway Patrol, 712 F.3d 446, 454 (9th Cir. 2013).
17 "'Clearly established' means that 'it would be clear to a reasonable [prison official] that his
18 conduct was unlawful *in the situation he confronted*.'" Wilkins v. City of Oakland, 350 F.3d
19 949, 954 (9th Cir. 2003) (quoting Saucier, 533 U.S. at 202).

20 It is well established that prison officials who are aware that inmates face a substantial risk
21 of serious harm, violate the Eighth Amendment by disregarding that risk and failing to take
22 reasonable measures to abate it. Farmer, 511 U.S. at 847. In cases alleging an Eighth
23 Amendment violation for failure to prevent harm, the objective component is met if an inmate
24 shows that he is incarcerated under conditions posing a substantial risk of harm. Clouthier v.
25 County of Contra Costa, 591 F.3d 1232, 1242 (9th Cir. 2010); see Hearns v. Terhune, 413 F.3d
26 1036, 1040 (9th Cir. 2005) (prison officials may be liable for failure to protect inmate from attack
27 by other inmates).

28 In this instance, Plaintiffs contend that Valley Fever is a serious infectious disease that can

17

1  be progressive, painful and debilitating.  (ECF No. 22 at ¶¶ 30, 32.)  Plaintiffs also contend that
2  prison officials knew that inmates in Plaintiffs' subclasses are at an increased risk of contracting
3  Valley Fever.  (Id. at ¶¶ 34, 39.)  "[W]hen the State takes a person into its custody and holds him
4  there against his will, the Constitution imposes upon it a corresponding duty to assume some
5  responsibility for his safety and general well-being."  DeShaney v. Winnebago County Dep't of
6  Social Services, 489 U.S. 189, 199-200 (1989).  Prison officials cannot ignore an unsafe condition
7  because no injury has occurred.  Helling v. McKinney, 509 U.S. 25, 33 (1993) (subjecting inmate
8  to danger of excessive level of second hand smoke may violate the Eight Amendment).

9  Similarly, the Ninth Circuit has addressed circumstances in which inmates were housed in
10 situations that placed them at a serious risk of contracting a contagious disease and found that it
11 could be deliberate indifference.  See Brigaerts v. Cardoza, 952 F.2d 1399, at *2 (9th Cir. 1992)
12 (unpublished opinion) ("Repeated exposure to contagious diseases may violate the [E]ighth
13 [A]mendment". . . .); Muhammad v. Turbin, 199 F.3d 1332, at *2 (9th Cir. 1999) (unpublished)
14 (recognizing that inmate could state a claim for deliberate indifference if contagious inmates were
15 housed in dangerous proximity to healthy inmates).  The Court finds this situation sufficiently
16 similar to Brigaerts and Muhammad to place prison officials on notice that subjecting inmates to a
17 substantial risk of contracting a serious disease without taking steps to protect them would violate
18 the Eighth Amendment.

19 The law was sufficiently clear prior to the claims raised here that if prison officials are
20 aware that certain inmates are at a significantly higher risk of contracting a disease based upon
21 identifiable criteria, it would be deliberate indifference to fail to take action to protect those
22 inmates.  Defendants' motion to dismiss the claims against the individual defendants on the basis
23 of qualified immunity should be denied.

24                                                            **V.**
25                                  **CONCLUSION AND RECOMMENDATION**
26    Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion to
27 dismiss should be GRANTED IN PART AND DENIED IN PART as follows:
28    1.   Defendants' motion to dismiss the claims against Edmund G. Brown, Jr. should be

GRANTED;

2. Defendants' motion to dismiss the Eighth Amendment claims against Matthew Cate, Jeffrey Beard, P.D. Brazelton, and James D. Hartley for failure to state a claim should be DENIED;

3. Defendants' motion to dismiss the racial discrimination claims as violating the Fourteenth Amendment for failure to state a claim should be GRANTED;

4. Defendants' motion to dismiss the racial discrimination claim pursuant to 42 U.S.C. § 1981 for failure to state a claim should be GRANTED without leave to amend;

5. Defendants' motion to dismiss claims against Defendants in their official capacities should be GRANTED;

6. Defendants motion to dismiss claims against Defendants State of California and CDCR should be GRANTED without leave to amend;

7. Defendants' motion to dismiss the state law negligence claims for failure to state a claim should be GRANTED;

8. Defendants' motion to dismiss the claims for damages on the basis of qualified immunity should be DENIED; and

9. Plaintiffs should be granted an opportunity to file an amended complaint to cure the deficiencies described in this order.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28

//

//

//

U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 20, 2014**

UNITED STATES MAGISTRATE JUDGE