# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR DUANE JACKSON, et al., | Case No. 1:13-cv-01055-LJO-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATION RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |
| v. | |
| STATE OF CALIFORNIA, et al., | (ECF No. 89) |
| Defendants. | |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Currently before the Court is Defendants' motion for judgment on the pleadings. (ECF No. 89.) The Court heard oral arguments on April 29, 2015. (ECF No. 101.) Counsel Brian Bush and Maria Weitz appeared for Plaintiffs, and counsel Jon Allin and Michelle Angus appeared for Defendants. <u>Id.</u> Having considered the moving, opposition, and reply papers, the declarations and exhibits attached thereto, arguments presented at the April 29, 2015, hearing, the Plaintiffs' supplemental briefing and Defendants' response, and the Court's file, the Court issues the following findings and recommendations.

## I.

## PROCEDURAL HISTORY

Plaintiffs Arthur Duane Jackson, Leonard M. Lujan, Marcus Jackson, Rodney Taylor, Lacedric Johnson, L.T. Belton, and Norman Johnson filed this civil rights action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1981 on July 9, 2013, on behalf of themselves and on behalf of all

1

others similarly situated. (ECF No. 43.) Plaintiffs bring this action against Defendants Edmund G. Brown, Jr., Matthew Cate, Jeffrey Beard, P.D. Brazelton, and James D. Hartley for deliberate indifference in violation of the Eights Amendment, racial discrimination in violation of the Fourteenth Amendment and 42 U.S.C. 1983, racial discrimination in violation of 42 U.S.C. § 1981, and negligence in violation of state law. Plaintiffs are seeking monetary damages and declaratory and injunctive relief.

Defendants filed a motion to dismiss on September 25, 2013. (ECF No. 15.) Plaintiffs filed a first amended complaint on October 16, 2013. (ECF No. 16.) On October 18, 2013, the Court issued an order denying Defendants' motion to dismiss as moot. (ECF No. 24.)

On November 4, 2013, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 25.) On February 20, 2014, the undersigned issued findings and recommendations recommending that Defendants' motion to dismiss be granted in part and denied in part and that Plaintiffs be granted an opportunity to file an amended complaint to cure the deficiencies. (ECF No. 38.) On March 10, 2014, District Judge Lawrence J. O'Neill issued an order adopting the findings and recommendations and dismissing Plaintiff's first amended complaint for failure to state a claim. (ECF No. 41.)

On March 24, 2014, Plaintiffs filed a second amended complaint. (ECF No. 43.) On April 28, 2014, Defendants filed a motion to dismiss the second amended complaint. (ECF No. 44.) On July 30, 2014, the undersigned issued a findings and recommendation recommending that Defendants' motion to dismiss be granted in part and denied in part. On August 20, 2014, District Judge O'Neill issued an order adopting the findings and recommendations and dismissing Plaintiff's claims based upon the contracts clause of 42 U.S.C. § 1981. (ECF No. 68.)

On October 1, 2014, Defendants filed an answer to the complaint. (ECF No. 74.) On February 2, 2015, Defendants filed a motion for judgment on the pleadings. (ECF No. 89.) Plaintiffs filed an opposition on April 10, 2015. (ECF No. 97.) Defendants filed a reply on April 22, 2015. (ECF No. 98.) After the hearing on April 29, 2015, Plaintiffs' filed a supplemental brief on May 1, 2015. (ECF No. 103.) Defendants filed a response on May 6, 2015. (ECF No. 104.)

## II.

## COMPLAINT ALLEGATIONS

Plaintiffs are current or former inmates who allegedly contracted Coccidiododomycosis, commonly known as Valley Fever, while incarcerated at Pleasant Valley State Prison ("PVSP") or Avenal State Prison ("ASP"). (Sec. Am. Compl. ¶¶ 3-10,[1] ECF No. 43.) This action is brought on behalf of three subclasses of Plaintiffs: 1) African-American inmates, 2) inmates over the age of 55, or 3) immune-compromised inmates who were incarcerated at PVSP or ASP from July 8, 2009 through the present and contracted Valley Fever. (Id. at ¶ 20.)

Plaintiffs allege that Valley Fever is a serious infectious disease which is contracted by inhalation of an airborne fungus and it is prevalent in the San Joaquin Valley of California. (Id. at ¶ 30.) Epidemiological studies have established that African-Americans, persons over the age of 55, and those in an immune-compromised state are at higher risk for developing Valley Fever. (Id. at ¶ 32.)

In June of 1994, the U.S. Centers for Disease Control and Prevention ("CDC") published an article reporting on the impact of Valley Fever in California and that 70% of the reported cases in California arose in the San Joaquin Valley. (Id. at ¶ 36.) In September 1995, the CDCR issued a memorandum describing the illness, its long term effects, and the increased risk of acquiring Valley Fever in the subclasses identified by Plaintiffs. (Id. at ¶ 37.) In September of 1996, an article was published by two doctors from the University of California-San Diego, School of Medicine, commenting on the Valley Fever epidemic of 1991-1993. (Id. at ¶ 40.)

In 1996, the National Foundation for Infectious Diseases held an International Conference on Coccidiododomycosis and published a summary of the articles discussed at the conference. Included in these articles was the "California Health Services Policy Statement on Coccidiododomycosis," which stated that from 1991 to 1993, California was spending $60 million in health care costs from Valley Fever infections. (Id. at ¶ 41.) The report recognized that Plaintiffs' subclasses were at a higher risk for developing Valley Fever. (Id. at ¶ 41.) The

---

[1]All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

report also identified the areas that house PVSP and ASP as the most likely place to generate Valley Fever infections and recommended preventive measures, such as using spherulin skin tests to identify those not vulnerable to infection, the use of dust control measures, masks and wetting of the soil. (Id. at ¶ 41.)

In 2005, in Plata v. Schwarzenegger, No. C01-1351, the Northern District of California ordered the California Correctional Health Care Services ("CCHCS") into a Receivership to address grossly sub-standard medical care provided to those in the custody of the CDCR. (Id. at ¶ 42.) The Plata Court has mandated that preventative measures recommended by the Federal Receiver in 2006 be implemented to protect individuals from becoming infected with Valley Fever. (Id. at ¶ 43.)

In 2006, the California Department of Public Health ("CDPH") issued a report addressing Valley Fever at PVSP and ASP and made suggestions to reduce the amount of Valley Fever infections experienced by individuals in Plaintiffs' subclasses. (Id. at ¶ 45.) These suggestions were not implemented by the CDCR. (Id. at ¶ 45.)

Beginning in 2007, a Fresno County Grand Jury evaluated the problematic health care at PVSP and had made a series of recommendations. (Id. at ¶ 55.) The Grand Jury observed that "[l]ocal prison officials are well aware of [the Valley Fever] health crisis," and stated that inmates and staff were at risk from Valley Fever. (Id. at ¶ 55.)

A memo dated November 20, 2007, to institutional staff, including the Wardens of eight prisons located in the hyper endemic area, discussed the significant increase in the number of Valley Fever cases among inmates at PVSP and ASP in 2005. (Id. at ¶ 60.) The memo recognized a mitigation approach that would inmates who met the "cocci susceptibility exclusion criteria" out of PVSP and ASP. (Id. at ¶ 60.)

In June 2007, the Statewide Medical Director for California Prison Healthcare Services submitted a report to the federal receiver entitled "Recommendations to Coccidioidomycosis Mitigation in Prisons in the Hyperndemic Areas of California." The report indicated that Defendants were recommending certain additional measures for immediate implementation, including environmental mitigation techniques at PVSP and ASP, deferring any new construction

that would result in additional prisoners being housed in the hyperendemic areas, providing indoor recreation areas for inmates to use during high wind/dust events, and continuing to exclude certain inmates from facilities in these areas.  (<u>Id.</u> at ¶ 71.)

The Federal Receiver, J. Clark Kelso, issued an April 16, 2012, report indicating that the Valley Fever health crisis had not abated.  (<u>Id.</u> at ¶ 75.)  In April 2012, the CCHCS also issued a report addressing Valley Fever in California Prisons which found that between 2006 and 2010 no action taken by CDCR had any effect on the incidence rates of Valley Fever at PVSP or ASP. (<u>Id.</u> at ¶ 76.)  The report confirmed that African-American men died from Valley Fever at far higher rates than the general inmate population.  (<u>Id.</u>)

On November 14, 2012, Mr. Kelso recommended several actions that could be undertaken immediately.  (<u>Id.</u> at 78.)  On December 3, 2012, Defendants Brown and Beard authorized CDCR to request assistance from CDPH.  (<u>Id.</u> at 79.)

On April 29, 2013, the Federal Receiver, J. Clark Kelso, issued a Cocci Exclusion Policy which was amended on May 1, 2013, directing PVSP and ASP to exclude all high risk inmates, including African-Americans, inmates over the age of 55, and those who were immune compromised.  (<u>Id.</u> at 72.)

Plaintiffs in this action allege that the defendants have been aware, since at least 2006, that Valley Fever affected those inmates in Plaintiff's subclasses and have taken some steps to reduce Valley Fever in the inmate population, but those efforts have been unsuccessful.  (<u>Id.</u> at ¶ 48.) Plaintiffs contend that Defendants have failed to take action to protect individuals in Plaintiffs' subclasses and they are seeking future health care and health costs after they are released from custody and compensatory damages.  (<u>Id.</u> at ¶¶ 44, 47.)

**Arthur Duane Jackson**

Plaintiff A. Jackson, an African-American inmate serving a sentence of 43 years to life, was transferred to PVSP around July 2009.  (<u>Id.</u> at ¶¶ 3, 49, 51.)  At the time of his transfer, Plaintiff A. Jackson was in good health.  Plaintiff A. Jackson experienced symptoms of Valley Fever in December 2011, and was temporarily blind as a result of the infection.  Plaintiff A. Jackson received treatment when he became ill, but his condition worsened and he developed

pneumonia.  (Id. at ¶ 50.)  Plaintiff A. Jackson continues to suffer from the disease.  He is receiving medication and is partially blind in his left eye due to the Valley Fever infection and suffers from severe headaches on a daily basis.  (Id. at ¶ 51.)

**Leonard M. Lujan**

Plaintiff Lujan is a 62 year old former inmate who was diagnosed with cancer prior to contracting Valley Fever in November 2010 while housed at ASP.  (Id. at ¶¶ 4, 52.)  Following his release from custody, Plaintiff Lujan continues to experience complications of Valley Fever such as pain, a black spot on his lung, difficulty walking, constant fever, cold sweats, and difficulty breathing and sleeping.  (Id. at 53.)

**Marcus Jackson**

Plaintiff M. Jackson is an African-American former inmate who was ordered into the custody of the CDCR in July 2009.  (Id. at ¶¶5, 54.)  Plaintiff contracted Valley Fever while housed at PVSP.  (Id. at 54.)  Following his release from custody, Plaintiff M. Jackson is experiencing panic attacks, mental stress, sleeplessness, nausea, inactivity, and vomiting.  (Id. at ¶ 55.)

**Rodney Taylor**

Plaintiff Taylor is an African-American former inmate who had diabetes at the time he was transferred to ASP.  (Id. at ¶ 6.)  Plaintiff Taylor lost twenty to thirty pounds in three weeks after he contracted Valley Fever at ASP.  (Id. at ¶ 56.)  Following his release from custody, Plaintiff is experiencing extreme headaches, difficulty walking, lack of endurance, frequent colds, fatigue, and back pain.  (Id. at ¶ 57.)

**Lacedric Johnson**

Plaintiff L. Johnson is an African-American inmate who is not scheduled for release until 2027.  (Id. at ¶¶ 7, 58.)  Plaintiff L. Johnson suffers from lung damage, fever, sweats, headaches, loss of concentration, aching joints, severe weight swings, loss of body hair, lightening of skin pigmentation, rash, dark spots on his skin, shortness of breath, fatigue, sleeplessness, back pain and side effects from his prescribed medication as a result of Valley Fever.  (Id. at ¶ 58.)

**L.T. Belton**

Plaintiff Belton is an African-American inmate who is scheduled for release in December 2013.  (Id. at ¶¶ 8, 59.)  Plaintiff Belton suffers from headaches, fatigue, difficulty sleeping, joint pain, shortness of breath, numbness on bottom of foot, and difficulty with bowel movements.  (Id. at ¶ 59.)  Plaintiff Belton is undergoing treatment for Valley Fever and taking medication daily.  (Id. at ¶ 60.)

**Norman Johnson**

Plaintiff N. Johnson is an African-American inmate who was in relatively good health at the time he was transferred to ASP in May 2012.  (Id. at ¶¶ 9, 61.)  Plaintiff N. Johnson is scheduled to be released from custody in July 2017.  Plaintiff N. Johnson experienced chills, lack of appetite, night sweats, chest pain, shortness of breath, muscle and joint pain, fever, and allergies as a result of his Valley Fever.  (Id. at ¶ 62.)

Plaintiffs bring this action alleging deliberate indifference in violation of the Eighth Amendment; racial discrimination in violation the Fourteenth Amendment and 42 U.S.C. § 1983; racial discrimination in violation of 42 U.S.C. § 1981; and state law claims of negligence.

### III.

### LEGAL STANDARD

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Judgment on the pleadings is appropriate when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.  Hal Roach Studios, Inc., v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard as a Rule 12(b)(6) motion.  McGlinchy v. Shell Chemical, 845 F.2d 802, 810 (9th Cir. 1988) (internal quotations and citations omitted).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-79.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.

When deciding a Rule 12(c) motion, "the allegations of the nonmoving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."  Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d at 1550 (citing Doleman v. Meiji Mutual Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984); Austad v. United States, 386 F.2d 147, 149 (9th Cir. 1967)).  The court construes all material allegations in the light most favorable to the non-moving party.  Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1046 (9th Cir. 2006).

Documents attached to, incorporated by reference in, or integral to the complaint may be properly considered under Rule 12(c) without converting the motion into one for summary judgment.  Rose v. Chase Manhattan Bank USA, 396 F.Supp.2d 1116, 1119 (C.D. Cal. 2005) (citing GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).  However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment.  Hal Roach Studios, 896 F.2d at 1550.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief.  Starr, 652 F.3d at 1216.

/ / /

/ / /

# IV.

## DISCUSSION

Defendants bring this motion for judgment on the pleadings on the grounds that 1) the conclusory allegations against Defendant Brown in his individual capacity do not state a claim for relief; (2) the second amended complaint fails to plead a causal connection between Plaintiffs' contracting Valley Fever and any conduct by several of the Defendants; 3) Defendants are entitled to qualified immunity; 4) the allegations cannot support a claim for injunctive relief against Defendants; and 5) Plaintiffs' state-law claims are barred by failures to comply with the California State Tort Claim Act, failures to plead exhaustion of administrative remedies, and failures to comply with the statute of limitations. (Mem. of P. & A. in Supp. of Mot. for Judgment on the Pleadings under Rule 12(c), ECF No. 89-2.)

### A.    Claims against Defendant Brown

Defendant Brown argues that the second amended complaint does not state a claim against him in his individual capacity for deliberate indifference in violation of the Eighth Amendment or racial discrimination in violation of Sections 1981 and 1983 of Title 28 of the United States Code, and therefore, the Court should grant his motion for judgment on the pleadings without leave to amend. (ECF No. 89-2 at 8-11.) Defendant Brown contends that Plaintiffs have failed to make specific allegations against him and the allegations are merely based on a theory of imputed knowledge "by virtue of [his] top executive position." (ECF No. 89-2 at 9.) Additionally, Defendant Brown contends that the complaint alleges conduct that happened before he was in office and conduct that allegedly happened after Plaintiffs had already contracted Valley Fever so he cannot be held liable for this conduct. (Id. at 10.)

Plaintiffs oppose the motion contending that the second amended complaint is replete with allegations demonstrating that Defendant Brown was aware of the serious medical risks to the Plaintiffs due to their susceptibility to Valley Fever and did not act to protect them. (Opp. of Pls. to Mot. of Dfs. for Judgment on Pleadings, ECF No. 97.) Plaintiffs are seeking to impose liability on Defendant Brown based upon his position as Governor of the State of California. (ECF No. 43 at ¶ 49.)

1         1. <u>Eighth Amendment Deliberate Indifference Claim</u>

2      Prison conditions must involve "the wanton and unnecessary infliction of pain" to

3 constitute cruel and unusual punishment in violation of the Eighth Amendment. <u>Rhodes v.</u>

4 <u>Chapman</u>, 452 U.S. 337, 347 (1981). To prove a violation of the Eighth Amendment based on

5 prison conditions, a prisoner must show that a prison official deprived the prisoner of the

6 "minimal civilized measure of life's necessities," and (2) the official "acted with 'deliberate

7 indifference' in doing so." <u>Grenning v. Miller-Stout</u>, 739 F.3d 1235, 1238 (9th Cir. 2014)

8 (quoting <u>Hallett v. Morgan</u>, 296 F.3d 732, 744 (9th Cir. 2002)). In order to find a prison official

9 liable under the Eighth Amendment for denying humane conditions of confinement within a

10 prison, the official must know "that inmates face a substantial risk of serious harm and disregard[]

11 that risk by failing to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 511 U.S. 825,

12 847 (1994). "Deliberate indifference is a high legal standard." <u>Toguchi v. Chung</u>, 391 F.3d

13 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of

14 the facts from which the inference could be drawn that a substantial risk of serious harm exists,'

15 but that person 'must also draw the inference.'" <u>Id.</u> at 1057 (quoting <u>Farmer</u>, 511 U.S. at 837).

16 "'If a prison official should have been aware of the risk, but was not, then the official has not

17 violated the Eighth Amendment, no matter how severe the risk.'" <u>Toguchi</u>, 391 F.3d at 1057

18 (quoting <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir. 2002)).

19      Under section 1983, liability may not be imposed on supervisory personnel for the actions

20 or omissions of their subordinates under the theory of *respondeat superior*. <u>Iqbal</u>, 556 U.S. at

21 677; <u>Simmons v. Navajo County, Ariz.</u>, 609 F.3d 1011, 1020-21 (9th Cir. 2010); <u>Ewing v. City of</u>

22 <u>Stockton</u>, 588 F.3d 1218, 1235 (9th Cir. 2009); <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir.

23 2002). "A supervisor may be liable only if (1) he or she is personally involved in the

24 constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's

25 wrongful conduct and the constitutional violation." <u>Crowley v. Bannister</u>, 734 F.3d 967, 977 (9th

26 Cir. 2013) (internal quotation marks and citation omitted). "Under the latter theory, supervisory

27 liability exists even without overt personal participation in the offensive act if supervisory

28 officials implement a policy so deficient that the policy itself is a repudiation of constitutional

rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Further, when resolving a claim under the Eighth Amendment against individual defendants, causation must be resolved via "a very individualized approach which accounts for the duties, discretion, and means of each defendant." Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988) citing with approval Williams v. Bennett, 689 F.2d 1370, 1384 (11th Cir. 1982) ("There can be no duty, the breach of which is actionable, to do that which is beyond the power, authority, or means of the charged party. One may be callously indifferent to the fate of prisoners and yet not be liable for their injuries. Those whose callous indifference results in liability are those under a duty -- possessed of authority and means -- to prevent the injury.")

In order to state a claim for deliberate indifference against Defendant Brown, Plaintiffs must allege sufficient facts to show that Defendant Brown was aware of the risk of harm to Plaintiffs. Plaintiffs argue that Defendant Brown had actual knowledge of the risk of harm to Plaintiffs based upon documents and events listed in the complaint. The complaint alleges that Defendant Brown has been Governor of California since January 3, 2011. (ECF No. 43 at ¶ 49.)

Plaintiffs' reliance on publications or events that are related to Valley Fever, without any factual allegations to link them to Defendant Brown as an individual defendant is not sufficient to infer knowledge to him. The liberal standards that apply to civil rights complaints may not supply essential elements of the claim that were not pled. Chapman v. Pier One Imports (U.S.), Inc., 631 F.3d 939, 955 (9th Cir. 2011). The conclusory allegations in the complaint are not entitled to the presumption of truth, Iqbal, 556 U.S. at 681, and are insufficient to state a plausible claim for relief.

Plaintiff lists documents issued prior to Defendant Brown becoming Governor in 2011, but the mere fact that these documents existed prior to Defendant Brown becoming Governor does not impute knowledge to him. (ECF No. 43 at ¶¶ 36 (article published by the CDC in 1994 entitled "Coccidioidomycosis- California 1991-1993"), 40 (publication by the CDC in 1996 entitled "Coccidioidomycosis: A Reemerging Infectious Disease"), 41 (summary of articles published in 1996 by the National Foundation for Infectious Diseases), and 59 (article in Prison

11

Legal News published in 2007).) The complaint is devoid of any factual allegations for the Court to infer that Defendant Brown had knowledge of any of these documents that were published prior to the date that Defendant Brown took office in January 2011.

Plaintiffs also allege no facts to show why Defendant Brown would have knowledge of documents published within the prison system prior to the time that he became Governor of California. (ECF No. 43 at ¶¶ 28 (CDCR memorandum in November 2004), 32 (report by Federal Receiver in 2006), 37 (CDCR memorandum in 1995), 49 (June 2007 committee recommendations), and 50 (November 20, 2007 memorandum re exclusion policy). Although the complaint alleges that Defendant Brown received copies of these items in the normal course of his duties, he was not Governor at the time that these documents were published and distributed and there is no information presented that Defendant Brown would have received these documents during the normal course of his duties as Governor. While Plaintiffs' factual allegations are entitled to the presumption of truth, the Court is not bound to accept as true a legal conclusion that is couched as a factual allegation, Iqbal, 556 U.S. at 678, or allegations that are contradicted within the complaint, Daniels-Hall, 629 F.3d at 998.

Likewise, Plaintiffs list documents that were presented to the Federal Receiver prior to the date that Defendant Brown took office. In 2006, the Federal Receiver was aware that the California State Health Department issued a report addressing Valley Fever and suggesting the implementation of environmental mitigation measures at PVSP and ASP to reduce the cocci spores in the ambient air to reduce the number of infections experienced by Plaintiffs' subclasses. (Id. at ¶ 45.) Plaintiffs allege that the Defendants had that authority to implement these changes, but the great majority of the changes were not implemented. (Id. at ¶ 71.) In June 2007, the Medical Director for California Prison Healthcare Services submitted a report to the Federal Receiver on recommendations for Valley Fever mitigation in prisons in the hyperendemic area of California. (Id. at ¶ 72.) The report recommended immediate implementation of environmental mitigation techniques for prisons in the hyperendemic area. (Id.) Plaintiffs fail to allege facts that show why Defendant Brown, even though he was a named party in his official capacity after he took office in Plata, would have had knowledge of these documents that were presented to the

Federal Receiver prior to the date that Defendant Brown took office.

However, Plaintiffs also allege that Defendant Brown acquired knowledge of the risk of harm to Plaintiffs because he received documents that were issued during his time as Governor. The subclasses identified in the second amended complaint include Plaintiffs who were susceptible to Valley Fever and who were housed at PVSP and ASP until at least the date that the original complaint was filed, which was July 9, 2013.[2]

Plaintiffs allege that Defendant Brown was aware of the risk of Valley Fever based upon events and documents that were issued in 2012 and 2013. (ECF No. 43 at ¶¶ 69 (meeting between Plata Plaintiffs' counsel, CDCR executives, and the Receiver on September 25, 2012), 75 (Receiver's Public Health and Quality Management Units April 16, 2012 report), 78 (recommendation by the Federal Receiver on November 14, 2012), 79 (request for assistance from CDPH on December 3, 2012), 80 (Receiver's Valley Fever policy dated April 29, 2013 (revised May 1, 2013); 82 (request for a stay of the Federal Court Order granting Receiver's application to exclude African Americans from ASP and PVSP). Defendants argue that the general, conclusory allegations concerning these documents and events in 2012 and 2013 fail to establish that Defendant Brown personally knew of these documents or was involved in these events or actions that were part of the Plata case while he was Governor and a named defendant in Plata.

Defendants argue that Defendant Brown was merely a named defendant sued in his official capacity in Plata, and therefore, he would not have had knowledge of the documents that were produced by the Federal Receiver in Plata and would not have had knowledge of the actions in Plata. Although Defendant Brown was a defendant in Plata in an official capacity, based on Plaintiffs' allegations, it is a reasonable inference that Defendant Brown would have received the documents listed in the complaint that the Federal Receiver issued in 2012 and 2013. (ECF No.

---

[2] Plaintiffs assert that the second amended complaint alleges that the subclasses include inmates who were susceptible to contracting Valley Fever and were harmed by a policy of housing inmates in the endemic area that continued through the "present." At the hearing on April 29, 2015, the parties presented different interpretations of the term "present" that is in the Plaintiff's second amended complaint. At this time, the Court does not need to determine what "present" means as used in the Plaintiff's second amended complaint, because it does not affect the analysis.

43 at ¶¶ 75, 78, and 80.)  While it is not reasonable that Defendant Brown would have received all of the documents that had been issued in <u>Plata</u> prior to the date that he took office, based upon the plausible allegations in the complaint, it is a reasonable inference that counsel in <u>Plata</u> would have given Defendant Brown the documents issued by the Receiver in 2012 and 2013 when he was Governor because he was the Governor and a named defendant in <u>Plata</u>.  (<u>Id.</u>)

Plaintiffs allege that the Receiver's April 29, 2013 Valley Fever exclusion policy called for exclusion from PVSP and ASP inmates who are African American, inmates who are immunocompromised, and inmates older than 55 years of age.  (ECF No. 43 at ¶ 80.)  Plaintiffs also allege that Defendants knew that CDCR refused to exclude these inmates even after CDPH provided in formal commentary that "a factor that probably contributed to the high rates in [PVSP and ASP] is housing populations of inmates at risk for severe [Valley Fever], such as African Americans."  (<u>Id.</u>)  Therefore, applying the Rule 8 pleading standard, Plaintiffs have plausibly alleged that Defendant Brown had knowledge of the risk to African American inmates, immunocompromised inmates, and inmates who are older than 55 years of age.

Further, Plaintiffs allege that Defendant Brown sought a stay of the Federal Court Order in <u>Plata</u> granting the Federal Receiver's application to mandate that African Americans be categorically excluded and immediately moved from ASP and PVSP.  (ECF No. 43 at ¶ 82.)  Although Defendants argue that Defendant Brown should not be liable for requesting a stay in his official capacity in a case, the question at this time for this analysis is whether Defendant Brown was aware that housing Plaintiffs at ASP and PVSP was a substantial risk of serious harm because of Valley Fever.  The Court is looking at whether Defendant Brown requesting a stay in <u>Plata</u> in his official capacity shows that he was aware of the Federal Court Order mandating that African Americans be categorically excluded and immediately moved from ASP and PVSP. Plaintiffs have made plausible allegations to satisfy the Rule 8 pleading standards that Defendant Brown requested a stay in <u>Plata</u> (ECF No. 43 at ¶ 82), and a reasonable inference based on the plausible pleadings in this case is that his counsel in <u>Plata</u> made him aware of the Federal Court Order and the decision to seek a stay.  (ECF No. 43 at ¶¶ 82, 87).  The fact that Defendant Brown requested a stay of the Federal Court Order in <u>Plata</u> shows that he had knowledge of the risk of

1  harm to the Plaintiffs because of Valley Fever.  Therefore, Plaintiffs' allegations are sufficient at

2  the pleading stage to show that as Governor and a named Defendant in <u>Plata</u>, Governor Brown

3  had knowledge of these documents in <u>Plata</u> that detailed the risks of Valley Fever and

4  recommendations for abating it.

5          Thus, Plaintiffs' second amended complaint sufficiently pleads that Defendant Brown, as

6  the Governor of California, was aware that the Plaintiffs were at an unreasonable risk of harm.

7  The Court also finds plausible allegations in the second amended complaint that Defendant

8  Brown had the authority to order prison officials to exclude certain inmates from certain prisons

9  in California, (ECF No. 43 at ¶¶ 49, 117, 119, 120), and that there were plausible allegations that

10  Defendant Brown failed to take reasonable measures to abate the risk to inmates.  (ECF No. 43 at

11  ¶¶ 47, 74, 78, 81, 86, 90, 117, 119, 120, 122, 123, 126).  Plaintiffs state a plausible claim that

12  Defendant Brown personally participated in a deprivation of their rights.  Accordingly, Plaintiffs

13  stated a cognizable claim against Defendant Brown for an Eighth Amendment violation and the

14  Court recommends that Defendant Brown's motion for judgment on the pleadings on the ground

15  that the Plaintiffs failed to state an Eighth Amendment claim be denied.

16          2.          Racial Discrimination Claims

17          Plaintiffs have alleged racial discrimination claims against Defendant Brown based on 42

18  U.S.C. §1983 violations for violations of the Fourteenth Amendment and a 42 U.S.C. 1981§

19  violation for a violation of the right to "like punishment."  (ECF No. 43 at ¶¶ 127-163.)

20          The Equal Protection Clause requires that all persons who are similarly situated should be

21  treated alike.  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (2001); <u>City of Cleburne v.</u>

22  <u>Cleburne Living Center</u>, 473 U.S. 432, 439 (1985).  An equal protection claim may be established

23  by showing that the defendant intentionally discriminated against the plaintiff based on the

24  plaintiff's membership in a protected class, <u>Lee</u>, 250 F.3d at 686; <u>Barren v. Harrington</u>, 152 F.3d

25  1193, 1194 (1998), or that similarly situated individuals were intentionally treated differently

26  without a rational relationship to a legitimate state purpose, <u>Thornton v. City of St. Helens</u>, 425

27  F.3d 1158, 1167 (2005); <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).  In order to

28  state a claim for racial discrimination pursuant to the Fourteenth Amendment, Plaintiffs must

allege sufficient facts to show that Defendant Brown acted with a discriminatory purpose.

Plaintiffs also allege racial discrimination in violation of 42 U.S.C. § 1981. To state a claim under Section 1981, "a plaintiff must establish that (1) he or she is a member of a racial minority; (2) the defendant intended to discriminate against plaintiff on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and enforce contracts, sue and be sued, give evidence, etc.)." Peterson v. State of California Dept. of Corrections and Rehabilitation, 451 F.Supp.2d 1092, 1101 (2006) (internal citations omitted). Similar to a violation of equal protection, to prevail on this claim, Plaintiffs must "prove as an element of the cause of action some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the [official's] action." Dennis v. Thurman, 959 F.Supp. 1253 (C.D. Cal. 1997) (internal punctuation and citations omitted); Hispanic Taco Vendors of Washington v. City of Pasco, 790 F.Supp. 1023, 1031 (E.D. Wash. 1991). Section 1981 can only be violated by purposeful discrimination. General Bld. Contractor's Ass'n, Inc., v. Pennsylvania, 458 U.S. 375, 391 (1982).

In Haugabrook v. City of Chicago, 545 F.Supp. 276, 280 n.5 (D.C. Ill. 1982), the court briefly addressed the issue of section 1981 stating "that section 1981 is not confined to contractual matters, though it is most often invoked in that context." "As the Third Circuit noted in Hall v. Pennsylvania State Police, 570 F.2d 86, 91 (3d Cir. 1978), '(r)acially motivated misuse of governmental power falls within the ambit of its 'equal benefit' and 'like punishment clauses' which provide that 'all persons ... shall have the same right ... to the full and equal benefit of all laws ... for the security of persons and property ... as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties ... and exactions of every kind, and to no other.' " Id.

Plaintiffs argue that this Court should not grant Defendant Brown's motion for judgment on the pleadings on the racial discrimination claims because the Court has already considered and ruled upon the sufficiency of Plaintiffs' racial discrimination allegations. (ECF No. 97 at 15.) Defendants argue that the Court's previous order did not address whether any particular Plaintiff had stated a plausible racial discrimination claim against any particular Defendant. (ECF No. 98 at 4.) Defendants contend that the Court's previous order only addressed whether the second

16

amended complaint had cured the first amended complaint's failure to allege any racial discrimination at all. (ECF No. 98 at 4.)

The law-of-the-case doctrine provides that a court should not reexamine an issue previously decided in that case by the same court or a higher court. Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988) (citations omitted). The previous order in the case must have "decided explicitly or by necessary implication" the issue that is in question. Milgard Tempering, Inc., v. Selas Corp. of America, 902 F.2d 703, 715 (9th Cir. 1990) (quoting Liberty Mutual Ins. Co. v. E.E.O.C., 691 F.2d 438, 441 (9th Cir. 1982). The law-of-the-case doctrine does not prevent a district court from reconsidering an order over which it has not been divested of jurisdiction. United States v. Smith, 389 F.3d 944, 949 (9th Cir. 2004). "A judge may reexamine his earlier ruling…if he has a conviction at once strong and reasonable that he earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it." Avitia v. Metropolitan Club of Chicago, Inc., 49 F.3d 1219, 1227 (7th Cir. 1995). The Court's previous order had addressed whether the allegations against the named Defendants were sufficient to state a claim. Although Defendant Brown was a named Defendant, the Court did not address the issue that the Defendants raise in this motion for judgment on the pleadings that are particular to whether the allegations merely try to impose liability against Defendant Brown based upon supervisory liability. Therefore, the Court finds that the law-of-the-case doctrine does not apply. Even if the law-of-the-case doctrine applied, the Court may, in its discretion, again consider Defendant Brown's argument that Plaintiff has not stated a claim for racial discrimination against Defendant Brown.

Here, as discussed above, the Court finds that the second amended complaint contains plausible factual allegations that Defendant Brown was aware that African American inmates were at an unreasonable risk of harm. Pursuant to the pleading standard at this motion for judgment on the pleadings, the complaint contains plausible allegations that Defendant Brown was aware of the risk to African American inmates of contracting disseminated disease and that African Americans were affected at a higher percentage than the general population. (ECF No. 43 at ¶¶ 80, 82, 87, 130). Further, the second amended complaint contains plausible allegations

that having this knowledge, Defendant Brown continued the policy of housing African American inmates at PVSP and ASP subjecting them to this risk instead of excluding them like the susceptible inmates who were excluded from PVSP and ASP pursuant to the November 20, 2007 memorandum. (ECF No. 43 at ¶¶ 60, 69, 72, 75, 78, 79, 80, 82.) The complaint contains allegations that Defendant Brown treated African Americans differently than other subclasses of persons with heightened susceptibility. (ECF No. 43 ¶¶ at 136, 138, 139.) The complaint contains reasonable allegations that Defendant Brown by virtue of his position as Governor had the authority to order prison officials to exclude certain inmates from certain prisons in California. (ECF No. 43 at ¶¶ 49, 117, 119, 120, 139, 146, 150.)

Therefore, under the pleading standard of Federal Rule of Civil Procedure 8, the Plaintiffs' have stated a cause of action under the Fourteenth Amendment for violation of Section 1983. The Plaintiffs have also set forth sufficient plausible factual allegations under the pleading standard of Federal Rule of Civil Procedure 8 for the Court to infer discriminatory intent on the basis of race at the pleading stage necessary for the Section 1981 claim. (ECF No. 43 ¶¶ at 69, 75, 78, 79, 80, 82, 136, 138, 139, 156, 161, 162, 163.)

Accordingly, considering the Court's pleading standard, the Court recommends that Defendant Brown's motion for judgment on the pleadings on the racial discrimination claims be denied.

**B. Plaintiffs' Standing to Sue Defendants**

1.  <u>Defendant Beard</u>

Defendant Beard argues that Plaintiffs lack standing to bring these claims against him because he was not responsible for Plaintiffs' confinement when Plaintiffs were allegedly exposed to Valley Fever. (ECF No. 89-2 at 12.) However, Plaintiffs argue that their claims encompass July 8, 2009, through the "present," and that they have sufficiently stated a claim because they have alleged that Defendant Beard is responsible for the health and welfare of the Plaintiffs and the operation of the California State prisons and knew of the substantial risk to the Plaintiffs' subclasses.

During the hearing on the motion for judgment on the pleadings on April 29, 2015, the

Court permitted Plaintiffs leave to provide further briefing on the issue of whether the named Plaintiffs in this case have standing to assert claims on behalf of the class against Defendants who were not directly responsible for Plaintiffs' care because they were not in office at the time the named Plaintiffs were infected with Valley Fever.[3] Plaintiffs argue that a "juridical link" exists between the named Defendants in this case because the multiple defendants shared a common relationship and engaged in a common course of conduct that caused a common injury to the Plaintiffs. (ECF No. 103 at 2-8.) In Defendants' reply to Plaintiffs' supplemental briefing, Defendants argue that the "juridical link" doctrine does not apply to this case because this case is distinguishable from cases applying the "juridical link" doctrine where the plaintiffs are seeking declaratory or injunctive relief challenging the constitutionality of statutes or uniformly applied rules. (ECF No. 104 at 3-5.)

Article III, Section 2 of the United States Constitution restricts adjudication in federal courts to cases and controversies. See Valley Forge Christian Coll. V. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Article III standing is present only when (1) a plaintiff suffers a concrete, particularized, and actual or imminent injury; (2) there is a causal connection between the injury and the conduct complained of; and (3) the injury will likely be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); Kaahumanu v. Hawaii, 682 F.3d 789, 796 (9th Cir. 2012). In a class action, standing must be addressed prior to class certification. See Lee v. Oregon, 107 F.3d 1382, 1390 (9th Cir. 1997).

Here, in the second amended complaint, Plaintiffs allege that Defendant Beard was appointed to Secretary of the CDCR on December 27, 2012. (ECF No. 43 at ¶ 51.) Defendant Beard argues that because all of the named Plaintiffs contracted disseminated Valley Fever before he was appointed to office, all of Plaintiffs' claims against Defendant Beard fail for lack of causation. (ECF No. 89-2 at 12.) Plaintiff A. Jackson alleges that he contracted disseminated

---

[3] Although Plaintiffs contend that the first time Defendants raised an Article III standing challenge was in their reply to Plaintiffs' opposition to Defendants' motion for judgment on the pleadings, the Plaintiffs raised the standing issue in their initial motion for judgment on the pleadings.

Valley Fever in January 2012; Lujan in November 2010; M. Jackson in October 2011; Taylor in December 2010; L. Johnson in October 2011; Belton in August 2010; and N. Johnson in July 2012. (ECF No. 43 at ¶¶ 3-9). Therefore, all of the named Plaintiffs contracted Valley Fever prior to Defendant Beard being appointed to Secretary of the CDCR, and the named Plaintiffs' injuries are not fairly traceable to the challenged action or inaction of Defendant Beard. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed2d 610 (2000).

Although Plaintiffs are seeking to represent a class of persons who contracted Valley Fever, the named plaintiffs must have standing to bring the suit. See Perez v. Nidek Co., Ltd., 711 F.3d 1109, 1113 (9th Cir. 2013). In Perez, the Ninth Circuit held that named plaintiffs do not have standing to bring a claim against a group of doctors who had not performed surgery on any of the named plaintiffs of the proposed class. Id. Here, all of the named Plaintiffs had contracted Valley Fever prior to Defendant Beard being appointed to Secretary of the CDCR, so there is no causal connection between Defendant Beard and the claimed injury to Plaintiffs.

Nonetheless, Plaintiffs argue that they should be permitted to pursue claims against Defendant Beard because the claims are asserted on behalf of a class of individuals who would have standing to sue Defendant Beard if they were to sue on their own. Plaintiffs cite to La Mar v. H&B Novelty & Loan Co., 489 F.2d 461 (9th Cir. 1973), for the proposition that they have standing because of the "juridical link" doctrine. In the context of determining whether a plaintiff could proceed with a cause of action for purposes of Federal Rule of Civil Procedure 23(a) against a specific defendant who had not injured that plaintiff, the Ninth Circuit held that a plaintiff without a cause of action against a specific defendant cannot fairly and adequately protect those interests of those who do have such causes of action. Id. at 469. In La Mar, the Ninth Circuit discussed the "juridical link" doctrine that was used in several district court cases to allow claims to go forward. Id. at 469-470. However, the Ninth Circuit did not find that the juridical link applied to the facts in La Mar nor did they specifically provide that it is an acceptable method for standing. Id.

However, the cases cited by Plaintiffs applied the "juridical link" doctrine for standing to

20

cases involving injunctive relief, and not, as here, personal liability cases seeking damages. <u>See</u> <u>Washington v. Lee</u>, 263 F.Supp. 327 (M.D.Al. 1966) (named plaintiffs were prisoners in Alabama seeking declaratory relief against all jailers and sheriffs in the State of Alabama even though plaintiffs were not housed in all of the jails in Alabama); <u>Samuel et al. v. University of</u> <u>Pittsburgh et al.</u>, 56 F.R.D. 435 (W.D.Pa. 1972) (plaintiffs were two married students who attended one college in Pennsylvania seeking declaratory and injunctive relief against all state universities which adhered to the rule that the named plaintiffs complained of); <u>Payton v. Cnty.</u> <u>Of Kane</u>, 308 F.3d 678, 681-82 (7th Cir. 2002) (named plaintiffs were a group of arrestees who brought suit against all county jails in Illinois challenging an unconstitutional policy even though named plaintiffs had not been incarcerated at each of the defendant counties' jails). Furthermore, Plaintiffs here allege claims that the individual Defendants, who occupied different positions in the government with different responsibilities, acted or failed to act in different ways.

Therefore, the juridical link doctrine does not apply to this case. Accordingly, judgment on the pleadings should be granted for Defendant Beard because the named Plaintiffs lack standing as to Defendant Beard.

### 2. Defendant Brazelton

Defendant Brazelton alleges that the second amended complaint fails to state a claim against him by any of the named Plaintiffs. (ECF No. 89-2 at 13.) Defendant Brazelton asserts that because he became warden of PVSP in June 2012, and the Plaintiffs who allegedly contracted Valley Fever as a result of their incarceration at PVSP contracted it before June 2012, the Plaintiffs fail to state any claim against him. (<u>Id.</u>)

As the Court previously discussed, at least one of the named Plaintiffs must have standing to bring suit against Defendants. <u>See</u> <u>Perez</u>, 711 F.3d at 1113. The second amended complaint alleges that Defendant Brazelton became warden of PVSP in June 2012. (ECF No. 43 ¶ 52.) There are no allegations in the second amended complaint that Defendant Brazelton is connected to any of the named Plaintiffs who were not housed at PVSP. Therefore, the named Plaintiffs who were not housed at PVSP do not have standing to bring claims against Defendant Brazelton on behalf of the class. A. Jackson, M. Jackson, and L. Johnson, who are the only named Plaintiffs

who allege that they contracted Valley Fever at PVSP, all contracted Valley Fever prior to Brazelton becoming warden of PVSP in June 2012. (ECF No. 43 at ¶ 3-9.) Therefore, these three named Plaintiffs do not have standing to bring these claims against Defendant Brazelton. As none of the Plaintiffs have standing to bring the claims alleged in the second amended complaint against Defendant Brazelton, there is no causal connection between Defendant Beard and the claimed injury to Plaintiffs. Accordingly, judgment on the pleadings should be granted for Defendant Brazelton because of a lack of standing.

### 3.   Defendant Brown

Defendant Brown argues that certain named Plaintiffs lack standing and subject matter jurisdiction to pursue their claims against him.[4] Defendant Brown argues that he was not responsible for Plaintiffs' confinement when Plaintiffs Lujan, Taylor, and Belton were allegedly exposed to Valley Fever. (ECF No. 89-2 at 12.) Therefore, Defendant Brown asks the Court to dismiss the claims of Lujan, Taylor, and Belton against him. However, M. Jackson alleges that he contracted Valley Fever in October 2011; L. Johnson in October 2011; A. Jackson in January 2012; and N. Johnson in July 2012). (ECF No. 43 at ¶ 3-9.) Therefore, some of the named Plaintiffs contracted Valley Fever after the date that Defendant Brown took office. (Id.) As there is at least one named Plaintiff who contracted Valley Fever after the date that Defendant Brown took office, at least one named Plaintiff has standing to pursue the claims against Brown. See Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007) (en banc) (court should consider whether at least one named plaintiff satisfies the standing requirements). As this is a class action, and at least one named Plaintiff has standing, Plaintiffs claims against Defendant Brown should not be dismissed for lack of standing and subject matter jurisdiction.

### 4.   Defendant Hartley

Defendant Hartley alleges that the second amended complaint fails to state a claim against him by the three named Plaintiffs who were not housed at Avenel State Prison. However, there is at least one named Plaintiff who allegedly contracted Valley Fever at Avenel during the time that

---

[4] The Court notes that Defendant Brown does not argue that all of the named Plaintiffs lack standing. In Defendant Brown's challenge to standing, he only names three specific Plaintiffs that he argues lack standing to sue him.

1  Defendant Hartley was Warden of Avenel.  See Bates, 511 F.3d at 985.  The second amended
2  complaint alleges that Defendant Hartley was officially appointed as Warden of Avenel State
3  Prison on March 27, 2009.  (ECF No. 43 at ¶ 53.)  Plaintiff Lujan alleges that he contracted
4  Valley Fever at Avenel State Prison in November 2010; Taylor in December 2010; Belton in
5  August 2010; and N. Johnson in July 2012.  (ECF No. 43 at ¶¶ 4-9.) Therefore, at least one
6  named Plaintiff has standing to pursue the claims against Defendant Hartley.  As this is a class
7  action, Plaintiffs claims against Defendant Hartley should not be dismissed for lack of standing
8  and subject matter jurisdiction.  See Bates, 511 F.3d at 985.

9        **C.     Injunctive Relief**

10       Defendants contend that Plaintiffs are seeking to have out of custody Plaintiffs provided
11  with medical care at the States' expense.  Defendants argue that Plaintiffs seek a fund to pay for
12  medical payment and that monetary damages are adequate to compensate for their injury.  (ECF
13  No. 89-2 at 19-20.)  Plaintiffs allege in the second amended complaint that they are seeking
14  medical treatment program for Plaintiffs who are no longer in the custody of the CDCR because
15  they need constant medical monitoring and treatment for their disease.  (ECF No. 43 at ¶¶ 105-
16  107.)

17       "To be entitled to a permanent injunction, a plaintiff must demonstrate: (1) actual success
18  on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are
19  inadequate; (4) that the balance of hardships justifies a remedy in equity; and (5) that the public
20  interest would not be disserved by a permanent injunction."   Independent Training and
21  Apprenticeship Program v. California Dep't of Industrial Relations, 730 F.3d 1024, 1032 (9th Cir.
22  2013).

23       In addition, as to those Plaintiffs that are in custody at the time this action is filed, any
24  award of equitable relief is governed by the Prison Litigation Reform Act, which provides in
25  relevant part, "[p]rospective relief in any civil action with respect to prison conditions shall
26  extend no further than necessary to correct the violation of the Federal right of a particular
27  plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court
28  finds that such relief is narrowly drawn, extends no further than necessary to correct the violation

23

of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). Additionally, injunctive relief is only appropriate if monetary damages or other legal remedies will not compensate the plaintiffs for their injuries. Walters v. Reno, 145 F.3d 1032, 1048 (9th Cir. 1998).

Plaintiffs' conceded at the hearing that they cannot receive injunctive relief on these individual capacity claims. Since Plaintiffs are not being subjected to a continuing violation of federal law, they cannot receive injunctive relief in this action. Green, 474 U.S. at 71. The Court recommends that Defendants' motion to dismiss the claim for injunctive relief be granted without leave to amend.

**D.     Qualified Immunity**

1.     Eighth Amendment Violation

**a.     Qualified immunity legal standard**

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001). The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Saucier, 533 U.S. at 200.

The district court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236. The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't. 556 F.3d 1075, 1085 (9th Cir. 2009)). In deciding whether officials are entitled to qualified immunity, the court is to view the evidence in the light most favorable to the plaintiff and resolve all material disputes in the favor of the plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th

Cir. 2003).

   b.   **The question at issue is whether housing inmates in prisons in areas endemic for Valley Fever, a naturally occurring soil-borne fungus which can lead to serious illness, would violate the Eighth Amendment**

Initially, Plaintiffs rely on this Court's previous finding in the initial findings and recommendations in this case that Defendants were not entitled to qualified immunity. (ECF No. 97 at 18.) In the initial finding and recommendation addressing qualified immunity in this case, this Court framed the issue as whether failing to protect high risk inmates from the risk of developing disseminated disease would violate the Eighth Amendment. (ECF No. 38 at 16-18.) However, upon consideration of the issue in the current motion, the Court finds this is not the correct question. Therefore, the Court finds that it is appropriate to address the substance of the qualified immunity claim in this motion for judgment on the pleadings. Further to the extent that this Court previously cited Helling v. McKinney, 509 U.S. 25 (1993), for the proposition that Defendants are not entitled to qualified immunity; it now finds that this action is distinguishable.

Defendants contend that they are entitled to qualified immunity because there is no clearly established right not to be housed in the Central Valley or otherwise be subjected to the environmental risk of Valley Fever. Plaintiffs contend that Defendants are defining the right too narrowly. Plaintiffs argue that the right to be addressed here is the significant increased risk of infection from Valley Fever.

It is the plaintiff that bears the burden of demonstrating that the right was clearly established at the time that the defendants acted. May v. Baldwin, 109 F.3d 557, 561 (9th Cir. 1997). Defendants cannot be held liable for a violation of a right that is not clearly established at the time the violation occurred. Brown v. Oregon Dep't of Corrections, 751 F.3d 983, 990 (9th Cir. 2014). A constitutional right is clearly established when its contours are "sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). In light of the preexisting law the lawfulness of the officials act must be apparent. Id. at 739. The court is to look to the state of the law at the time the defendants acted to see if it gave fair warning that the alleged conduct was unconstitutional. Id. at

741.

Further, the Supreme Court has emphasized that it is often difficult for an official to determine how relevant legal doctrine will apply to the specific situation that is faced and that is why qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law[.]" Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002). It is not sufficient for Plaintiff to merely argue the general rule that prison officials cannot deliberately disregard an excessive risk of harm. Estate of Ford, 301 F.3d at 1051.

When we are considering whether the official had notice that his conduct was unlawful, we look not to the harm that results, but what condition the inmate was exposed to that could cause the harm. In Helling, the question was not how serious the harm to the inmate could be from second hand smoke, but whether exposing the inmate "to levels of ETS that pose an unreasonable risk of serious damage to his future health" would violate the Eighth Amendment. 509 U.S. at 35. The condition the inmate was exposed to was ETS due to being housed with a cellmate who smoked five packages of cigarettes per day.

While Plaintiffs argue that in determining qualified immunity we consider the risk of disseminated disease, Plaintiffs are not exposed to disseminated disease. Plaintiffs allege that they are housed in the Central Valley in an area where spores that cause Valley Fever are endemic. Plaintiffs allege that the subclasses have some factor which causes them to be at an increased risk of developing disseminated infection from Valley Fever. If Plaintiffs are correct that we look only to the harm that could result, the right to be free from any act that caused significant harm would be clearly established and Defendants could never be granted qualified immunity. That is clearly not the intent of the law.

During the hearing on April 29, 2015, Plaintiffs argued that qualified immunity cannot mean that the first time a right is violated the defendants are not liable. However, when a right is not clearly established, a defendant is entitled to qualified immunity from damages. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982).  That is not to say that a plaintiff who is barred because of qualified immunity from pursuing claims based on violations of federal law is without remedy for his injury because he could seek tort damages for violations of state law.  But the question we address here is whether it is clearly established that the conduct at issue would violate the inmate's federal rights.

When confronted with a claim for qualified immunity we are to ask "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right."  Brosseau v. Haugen, 543 U.S. 194, 197 (2004).  This inquiry is to be taken in light of the specific context of the case and not as a broad general proposition.  Brosseau, 543 U.S. at 198.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 199 (quoting Saucier, 533 U.S. at 202).  Prison officials are entitled to qualified immunity where it is not clearly established that the conduct complained of would violate the Eighth Amendment.  Pearson, 555 U.S. at 243.

The Supreme Court has told us that we are not to define clearly established law at a high level of generality.  Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2084 (2011).  While Plaintiffs rely on the risk of harm and argue the general rule, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."  Wilson v. Layne, 526 U.S. 603, 615 (1999).  The Ninth Circuit recently addressed a deliberate indifference claim in which an arrestee was placed in the drunk tank and was attacked by another detainee.  Castro v. Cnty. of Los Angeles, __ F.3d.__, 2015 WL 1948146, at *1-2 (9th Cir. May 1, 2015).  The right at issue was not merely the right to be free from a risk of violence, but was found to be "the right to be free from violence at the hands of other inmates."  Id.

Here, Plaintiffs allege that they were exposed to Coccidioides fungal spores that exist in the soil and when inhaled can cause Valley Fever.  The Court finds that the question to be addressed here is whether it was clearly established that housing inmates in prisons in areas endemic for Valley Fever, a naturally occurring soil-borne fungus which can lead to serious

1    illness, would violate the Eighth Amendment.[5]

2        **c.    It is not clearly established that environmental exposure of inmates to Valley**
3            **Fever would violate the Eighth Amendment**

4        When defendants are arguing that it is unclear whether the right at issue exists, a court can

5    consider the second prong of the inquiry first.  Pearson, 555 U.S. at 236.  Qualified immunity

6    shields an official from personal liability where he reasonably believes that his conduct complies

7    with the law.  Pearson, 555 U.S. at 244.  " 'Qualified immunity gives government officials

8    breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly

9    incompetent or those who knowingly violate the law.' "  Stanton v. Sims, 134 S.Ct. 3, 5 (2013)

10   (citations omitted).  In determining whether the defendant is entitled to qualified immunity, the

11   court is to determine if "a reasonable officer would have had fair notice that [the action] was

12   unlawful, and that any mistake to the contrary would have been unreasonable."  Chappell v.

13   Mandeville, 706 F.3d 1052, 1056-57 (9th Cir. 2013) (quoting Drummond ex rel. Drummond v.

14   City of Anaheim, 343 F.3d 1052, 1060–61 (9th Cir. 2003)).

15       Prison officials are entitled to qualified immunity where it is not clearly established that

16   the conduct complained of would violate the Eighth Amendment.  Pearson, 555 U.S. at 243.

17   Prison officials cannot be deliberately indifferent to conditions of confinement that create a

18   substantial risk of significant harm.  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  To prove a

19   violation of the Eighth Amendment a plaintiff must "objectively show that he was deprived of

20   something 'sufficiently serious,' and make a subjective showing that the deprivation occurred

21   with deliberate indifference to the inmate's health or safety."  Thomas v. Ponder, 611 F.3d 1144,

22   1150 (9th Cir. 2010) (citations omitted).  "A deprivation is sufficiently serious when the prison

23   _____
     [5] In determining how to frame the right at issue, the Court considers Helling.  In Helling, the inmate was alleging that
24   he was exposed to a condition created by other prisoners smoking cigarettes with exposed him to environmental
     tobacco smoke ("ETS").  The Helling court did not frame the right as a manmade condition that could cause a serious
25   risk of harm.  In Helling, the Supreme Court considered whether exposing the inmate "to levels of ETS that pose an
     unreasonable risk of serious damage to his future health" would violate the Eighth Amendment.  509 U.S. at 35.  The
26   court considered the specific substance to which the inmate alleged he was exposed that would cause him harm.
     Similarly in this instance, the Court considers that Plaintiffs are alleging they are exposed to spores which can cause
27   Valley Fever.  However, as discussed below, the Court is not requiring a case to be directly on point, but is analyzing
     whether prior case law would place Defendants on notice that the exposure of inmates to Valley Fever would violate
28   Plaintiffs' rights under the Eighth Amendment.

                                         28

official's act or omission results in the denial of the minimal civilized measure of life's necessities." Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009) (internal punctuation and citations omitted). A plaintiff satisfies the objective component of whether he has been exposed to a sufficiently serious deprivation by showing that he is incarcerated under conditions that pose a substantial risk of serious harm. Lemire v. California Dep't of Corrections and Rehabilitation, 726 F.3d 1062, 1075 (9th Cir. 2013). Therefore, the Court shall examine the state of the law to determine if it is clearly established that housing inmates in prisons in areas endemic for Valley Fever would violate the Eighth Amendment.

i.     There does not have to be case directly on point, but prison officials must have had fair notice that the conduct violates the Eighth Amendment

It is not required that there be a case directly on point before concluding that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." Stanton, 134 S.Ct. at 5 (quoting al-Kidd, 131 S.Ct. at 2085. It was in Hope that the Supreme Court established that a case need not be fundamentally similar for prison officials to have notice that their conduct would violated the Eighth Amendment.

In Hope, an inmate appealed the finding that prison officials were entitled to qualified immunity for handcuffing him to a hitching post for hours as a form of punishment. Hope, 536 U.S. at 735. The district court found that although the actions violated the Eighth Amendment, the officials were entitled to qualified immunity. Id. The Eleventh Circuit affirmed, stating that, while there were two analogous cases, there were no cases with materially similar facts to place defendants on notice. Id. The Supreme Court reversed holding that precedent does not require a factual situation to be fundamentally similar, but the prior decision must give reasonable warning that the conduct at issue would violate a constitutional right. Id. at 740.

At the time the defendants in Hope acted there were two cases, Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974) and Ort v. White, 813 F.2d 318 (11th Cir. 1987), which held that corporal punishment which runs afoul of the Eighth Amendment, such as handcuffing inmates to a crate or cell for long periods of time and denial of drinking water after the prisoner terminates his resistance, are not permitted. Hope, 536 U.S. at 741-43. The Court concluded that "Hope was

treated in a way antithetical to human dignity—he was hitched to a post for an extended period of time in a position that was painful, and under circumstances that were both degrading and dangerous[,]" not out of necessity, but as a punishment for prior conduct.  Id. at 745.  Gates and Ort provided sufficient notice that this conduct would be unconstitutional.  Id.  In applying the holding in Hope, this Court is to determine if there is case law that would have provided Defendants with sufficient notice that environmental exposure of inmates to Valley Fever would violate their Eighth Amendment rights.

Significantly, the Eighth Amendment prohibits punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society."  Estelle v. Gamble, 429 U.S. 97, 102 (1976) (citations omitted).  Conditions that cannot be said to be cruel and unusual under contemporary standards of decency do not violate the Eighth Amendment.  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

ii.     Review of Supreme Court, Circuit, and District Court decisional law shows that Defendants do not have notice that environmental exposure to Valley Fever would violate the Eighth Amendment

In determining if the law is clearly established we first look to binding precedent.  Chappell, 706 F.3d at 1056.  If there is none on point, we look to other decisional law, including the law of other circuits and district courts.  Id. at 1056; Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir. 1996).  The Court finds no Supreme Court or published Ninth Circuit case that has addressed whether an inmate's environmental exposure to Valley Fever or any other environmental organism would be a violation of the Eighth Amendment.[6]  Therefore, the Court looks to other

_____

[6] There are two unpublished Ninth Circuit cases which remanded Valley Fever cases without discussion of what would be required to state a claim under the Eighth Amendment.  See Smith v. Schwarzenegger, 393 Fed.App'x 518, 2010 WL 3448591 (9th Cir. 2010) (not beyond a doubt that plaintiff could prove no set of facts entitling him to relief); Johnson v. Pleasant Valley State Prison, 505 Fed.App'x 631, 2013 WL 226722 (9th Cir. 2013) (given the low pleading threshold, dismissal of plaintiff's action at the pleading stage was improper, expressing no opinion as to the sufficiency or merits of the allegations).  "An unpublished disposition is, more or less, a letter from the court to parties familiar with the facts, announcing the result and the essential rationale of the court's decision."  Hart v. Massanari, 266 F.3d 1155, 1178 (9th Cir. 2001).  "[T]he disposition is not written in a way that will be fully intelligible to those unfamiliar with the case, and the rule of law is not announced in a way that makes it suitable for governing future cases."  Hart, 266 F.3d at 1177-78.  "Unpublished dispositions and orders of [the Ninth Circuit] are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."  CTA9 Rule 36-3.

conditions of confinement cases addressing environmental exposure to determine if the right at issue is clearly established.

### a) The Court finds no Supreme Court or Ninth Circuit precedent to place Defendants on notice that housing inmates in areas endemic for Valley Fever would violate the Eighth Amendment

#### i) <u>Helling is distinguishable from the situation confronted by prison officials here</u>

Plaintiffs rely on <u>Helling</u> to argue that the right to be free from environmental exposure to Valley Fever is clearly established.    In <u>Helling,</u> the Supreme Court addressed whether environmental exposure to environmental tobacco smoke ("ETS") would violate the Eighth Amendment.  The plaintiff alleged that he was housed with a cellmate who smoked up to five packages of cigarettes per day exposing the plaintiff to ETS that posed a risk to his health. <u>Helling</u>, 509 U.S. at 27.  A court trial was held and after a directed verdict, judgment was entered for the defendants.  <u>Id.</u> at 29.  The Court of Appeals affirmed the lower court decision on the basis of qualified immunity, but held that, although the plaintiff did not have a constitutional right to a smoke free environment, plaintiff had stated a cause of action under the Eighth Amendment by alleging he was involuntarily exposed to levels of ETS that posed an unreasonable risk of harm to his future health.  <u>Id.</u>  In support of the judgment, the Court of Appeals noted the scientific opinion supporting plaintiff's contention that exposure to ETS could endanger an individual's health and "society's attitude had evolved to the point that involuntary exposure to unreasonably dangerous levels of ETS violated current standards of decency."  <u>Id.</u>

The issue the Supreme Court addressed was whether the plaintiff had stated an Eighth Amendment claim by alleging his compelled exposure to ETS posed an unreasonable risk to his health.  <u>Helling</u>, 509 U.S. at 31.  The Supreme Court rejected the defendants' argument that only deliberate indifference to an inmate's current serious health problem is actionable under the Eighth Amendment, and held that the Eighth Amendment protects against future harm.  <u>Id.</u> at 33. The Supreme Court remanded stating:

> The Court of Appeals has ruled that McKinney's claim is that the level of ETS to which he has been involuntarily exposed is such that his future health is unreasonably endangered and has remanded to permit McKinney to attempt to

31

prove his case. In the course of such proof, he must also establish that it is contrary to current standards of decency for anyone to be so exposed against his will and that prison officials are deliberately indifferent to his plight. We cannot rule at this juncture that it will be impossible for McKinney, on remand, to prove an Eighth Amendment violation based on exposure to ETS.
Id. at 35.

[W]ith respect to the objective factor, determining whether McKinney's conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

Id. at 36.

The Court finds that Helling is distinguishable for two interrelated reasons. First, in this instance, Plaintiffs are exposed to a naturally occurring fungus that lives in the soil in the Central Valley. Helling did not address a naturally occurring condition that causes the same risk to those in the surrounding community. Second, the court recognized that society's attitude had evolved to the point that involuntary exposure to unreasonably dangerous levels of ETS violated current standards of decency. That is not the case here where society accepts exposure to Valley Fever. Since Helling is distinguishable as it does not address an environmental condition that exposes the general community to a risk of harm, it does not provide reasonable warning that the conduct at issue here would violate a constitutional right. Hope, 536 U.S. at 740.

The Court therefore turns to precedential Ninth Circuit decisions addressing exposure of inmates to an environmental condition to determine if there is a case sufficiently similar to give Defendants reasonable warning that the conduct here would violate the Eighth Amendment. The majority of Ninth Circuit cases that consider environmental conditions of confinement address exposure to ETS which the Court finds to be distinguishable as discussed above.

ii) <u>Neither Ninth Circuit decisions nor common sense would clearly establish that housing inmates in an area endemic to Valley Fever would violate the Eighth Amendment</u>

The Ninth Circuit has recognized that a right can be established by precedent or by common sense. Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996). In determining whether the

law is clearly established in this instance, the Court therefore considers both precedent and whether common sense would clearly establish the right.

In <u>Kelley v. Borg</u>, 60 F.3d 664 (9th Cir. 1995), the Ninth Circuit considered a case in which an inmate complained of fumes in his cell from which officers refused to remove him during a lockdown. 60 F.3d at 665. A short time later, the inmate became unconscious and was taken to the infirmary. <u>Id.</u> at 666. The appellate court affirmed the district court's holding that it was clearly established that this was deliberate indifference to a serious medical need. <u>Id.</u> at 666-67. <u>Kelley</u> does not stand for the general proposition that any condition that would cause substantial harm to an inmate would violate the Eighth Amendment.

Where an inmate is in imminent danger from an environmental hazard, case law is not required to determine that the right was clearly established. That would be an instance where common sense would lead a reasonable prison official to determine that that would violate an inmate's rights. <u>Newell</u>, 79 F.3d at 117. However, it is not so obvious for every instance where an inmate is subjected to an environmental condition and complains that it violates the Eighth Amendment. <u>See</u> <u>Sawyer v. Cole</u>, No. 3:10-cv-00088-RCJ-WGC, 2012 WL 6210039, *4 (D. Nev. Dec. 12, 2012) <u>aff'd</u>, 563 F. App'x 589 (9th Cir. 2014) (qualified immunity applies where inmate alleged he became ill due to mold, fungus, bacteria and otherwise unsanitary conditions in his cell. "[T]he right against seriously dangerous unsanitary conditions cannot be held to be 'clear' at a so high level of generality that any claim of uncleanliness necessarily rises to the level of a constitutional violation against which an officer has no qualified immunity.") The right alleged here is not so obvious that common sense would dictate the result of the inquiry.

In <u>Wallis v. Baldwin</u>, 70 F.3d 1074 (9th Cir. 1995), the Ninth Circuit considered an inmate's claim that prison officials violated his rights when he was required to clean attics which included cleaning up insulation containing asbestos without adequate protective gear or training. 70 F.3d at 1075. The evidence did not show that even minimum exposure to asbestos was considered safe. <u>Id.</u> at 1075. Plaintiff presented evidence that the prison officials were aware of the existence of the asbestos and during the time he was assigned to clean the attic Plaintiff had complained to officials about the asbestos. <u>Id.</u> at 1077. The court held that exposing the inmate

33

to a known carcinogen in which there is no known safe level for human exposure violated the Eighth Amendment.[7] Id. at 1078. Therefore, it is clearly established that prison officials cannot expose an inmate to conditions to which no human can safely be exposed. Since Valley Fever spores are not considered a substance to which no human can safely be exposed this does not place Defendants on notice that environmental exposure to Valley Fever would violate the Eighth Amendment.

In Keenan v. Hall, 83 F.3d 1083 (9th Cir. 1996), an inmate brought suit complaining his conditions of confinement violated the Eighth Amendment. One of the inmate's numerous claims alleged that "food at the IMU was 'spoiled, tampered with, cold, raw, [and failed] to meet a balanced nutritional level,' and that the water was 'Blue/Green in Color and Foul Tasting.' Keenan, 83 F.3d at 1091 opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998). The Ninth Circuit held that "[f]ood that is spoiled and water that is foul would be inadequate to maintain health." Id. However, exposing an inmate to an environmental condition that naturally occurs in the area is not similar to failing to provide fresh food and clean water.

The Court finds that none of these cases would provide sufficient notice to Defendants that housing inmates in areas endemic for Valley Fever would violate the Eighth Amendment.

> **b)** **Out of circuit precedent does not provide sufficient notice that housing inmates in areas endemic for Valley Fever would violate the Eighth Amendment**

Finding no Supreme Court or Ninth Circuit precedent that would place Defendants on notice that housing inmates in areas endemic for Valley Fever would violate the Eighth Amendment, the Court next considers out of circuit decisional law for guidance on the issue. The Eleventh Circuit considered a class action in which inmates on death row alleged that they were subjected to cruel and unusual punishment by being exposed to summertime temperatures in their

---

[7] The Fifth Circuit held that for an inmate to state a claim for exposure to carcinogenic asbestos particles, he must show that he was exposed to unreasonably high levels of environmental toxins. Herman v. Holiday, 238 F.3d 660, 664 (5th Cir. 2001).

In Powell v. Lennon, 914 F.2d 1459 (11th Cir. 1990), the Eleventh Circuit found that housing inmates in a dormitory in which workers removed pipes from the dormitory releasing large quantities of asbestos into the air would violate the Eighth Amendment.

cells of between eighty to one hundred degrees.  Chandler v. Crosby, 379 F.3d 1278, 1283-86 (11th Cir. 2004).  The appellate court noted that while an inmate need not wait for a tragic event to occur before seeking relief, he must show that the challenged conditions are extreme. Chandler, 379 F.3d at 1289.  A plaintiff must show at the very least that there is an unreasonable risk of serious damage to his future health or safety and, quoting Helling, that the risk is one that society chooses not to tolerate.  Id.  The appellate court then examined other cases involving exposure to heat and ventilation.  Id. at 1291-95.  The court first found that the Eighth Amendment applied to an inmate's claim of inadequate cooling and ventilation and a claim may be stated based upon the conditions in isolation or in combination.  Id. at 1294.  Second, the Eighth Amendment is concerned with the severity and the duration of the conditions to which the inmate is exposed.  Id.  Third, a prisoner's mere discomfort, without more, does not offend the Eighth Amendment.  Id.  The appellate court found that the heat the plaintiffs were exposed to was not unconstitutionally excessive.  Id. at 1297.  Considering the conditions the inmates were exposed to, the inmates did not meet the high bar to state a claim under the Eighth Amendment. Id. at 1298; cf. Gates v. Cook, 376 F.3d 323 (5th Cir. 2004) (affirming injunctive relief for inmates subjected to profound isolation, lack of exercise, stench and filth, malfunctioning plumbing, high temperatures, uncontrolled mosquito and insect infestations, a lack of sufficient mental health care, and exposure to psychotic inmates in adjoining cells which violates the Eighth Amendment).

In Rish v. Johnson, 131 F.3d 1092 (4th Cir. 1997), the Fourth Circuit considered inmates claims that requiring them to clean up blood and other bodily fluids from environmental surfaces without providing them with protective gear violated the Eighth Amendment.  131 F.3d at 1094. The inmates had volunteered to work as orderlies.  Id.  As orderlies, they cleaned up after inmates who were infected with human immunodefiency virus (HIV) and hepatitis B which both may prove fatal.  Id. at 1094-95.  The district court denied the defendants' motion for summary judgment finding that "a reasonable person, especially a federal officer trained in the prevention of infection or charged with ensuring that inmates take the required precautions, would know that they were violating [the] inmates' constitutional rights if they refused to provide the required

equipment or training." Id. at 1095. The appellate court reversed, finding "there is no clearly established law dictating that prison officials are deliberately indifferent to a substantial risk of bodily harm if they fail to provide equipment to inmates to ensure that they may follow universal precautions in performing the duties of an orderly." Id. at 1101.

In a case which this Court finds to be factually analogous to this action, Carroll v. DeTella, 255 F.3d 470 (7th Cir. 2001), the plaintiff alleged that he was exposed to drinking water that was contaminated with radium. 255 F.3d at 471-72. The plaintiff contended that over a four year period he was exposed to unsafe levels of radium that were in excess of the maximum set by the Federal Environmental Protection Agency, while prison guards were provided with bottled water. Id. at 472. There were 80 other Illinois water systems that also had radium in their water supply, but there was no evidence regarding the actual radium level in those communities' water supply. Id. The Seventh Circuit found that:

> Poisoning the prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment, and might be even if the harm was probabilistic or future rather than certain and immediate, Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not. McNeil v. Lane, 16 F.3d 123, 125 (7th Cir.1993); Steading v. Thompson, 941 F.2d 498 (7th Cir.1991); Harris v. Fleming, 839 F.2d 1232, 1235–36 (7th Cir.1988); Clemmons v. Bohannon, 956 F.2d 1523, 1527 (10th Cir.1992) (en banc). Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans. McNeil v. Lane, supra, 16 F.3d at 125; Givens v. Jones, 900 F.2d 1229, 1234 (8th Cir.1990). It would be inconsistent with this principle to impose upon prisons in the name of the Constitution a duty to take remedial measures against pollution or other contamination that the agencies responsible for the control of these hazards do not think require remedial measures. If the environmental authorities think there's no reason to do anything about a contaminant because its concentration is less than half the maximum in a proposed revision of the existing standards, prison officials cannot be faulted for not thinking it necessary for them to do anything either. They can defer to the superior expertise of those authorities.

Carroll, 255 F.3d at 472-73.

The Seventh Circuit also considered an asthmatic prisoner's claim that prison officials violated the Eighth Amendment by allowing him to be exposed to ETS from which he cannot

36

escape due to his captivity.  <u>Steading</u>, 941 F.2d at 499.[8]  At this time, smoking was common in offices, restaurants, and other public places throughout the United States and the rest of the world. <u>Steading</u>, 941 F.2d at 500.  The Seventh Circuit compared subjecting prisoners to tobacco smoke to restaurant owners subjecting their patrons to smokers and found that exposure to smoke could not be considered punishment.  <u>Id.</u>  The appellate court found that "[p]risoners allergic to the components of tobacco smoke, or who can attribute their serious medical conditions to smoke, are entitled to appropriate medical treatment, which may include removal from places where smoke hovers."  <u>Steading</u>, 941 F.2d at 500.  But subjecting inmates to the same conditions that society is subjected to was not punishment and did not violate the Eighth Amendment.  <u>Id.</u>  <u>Carroll</u> and <u>Steading</u> stand for the proposition that subjecting inmates to conditions of confinement to which society is also subjected does not violate the Eighth Amendment.

### c) Exposure to Valley Fever is a risk that society chooses to tolerate

Having reviewed Supreme Court and circuit case law, the Court finds that there is no case that would place Defendants on notice that housing inmates in an area that is endemic for Valley Fever would violate the Eighth Amendment.  In this instance, as in <u>Carroll</u>, where the radium was in the water supply of 80 communities, a large number of individuals in the Central Valley are exposed to Valley Fever spores in the environment.  The 2013 census shows that over a million people reside in the San Joaquin Valley where the risk of Valley Fever is present.[9]  <u>See</u> United States Census Bureau, State & County QuickFacts, Kern County, California (2013 estimated population of 864,124) http://www.census.gov/quickfacts/#table/PST045214/06029,00; Fresno County California (2013 estimated population of 955,272)

---

[8] The Court does note that <u>Schroeder v. Kaplan</u>, 60 F.3d 834 (9th Cir. 1995) (unpublished), discusses that the Ninth Circuit has recognized that housing an inmate with a sensitivity to smoke in a cell with a heavy smoker may violate the Eighth Amendment.  However, the Court does find that exposure to cigarette smoke is distinguishable as it was not a risk that society chose to tolerate at that time.  <u>Schroeder</u> did not address whether exposure to a risk that society chooses to tolerate would violate the Eighth Amendment.

[9] Under the Federal Rules a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Judicial notice may be taken "of court filings and other matters of public record."  <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n.6 (9th Cir. 2006); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001).

http://quickfacts.census.gov/qfd/states/06/06019.html last visited Feb. 6, 2015. Much of the litigation regarding Valley Fever originates from inmates incarcerated at ASP which is located in Avenal, California, or PVSP which is located in Coalinga, California. (ECF No. 28 at ¶ 33.) Tens of thousands of people live, work, and raise their families in the vicinity of ASP and PVSP. See United States Census Bureau, Avenal, California http://quickfacts.census.gov/qfd/states/06/0603302.html (last visited February 2, 2015) (2013 estimated population of 14,176); City of Coalinga HomePage located at http://www.coalinga.com/?pg=1 (last visited February 2, 2015) (approximately 18,000 residents in Coalinga); Pleasant Valley State Prison HomePage located at http://www.cdcr.ca.gov/Facilities_Locator/PVSP.html. Additionally, West Hills Community College is located in Coalinga. See City of Coalinga HomePage located at http://www.coalinga.com/?pg=1 (last visited February 9, 2015). It cannot be disputed that a significant number of individuals from all of the high risk categories identified by Plaintiffs live in those areas identified as hyperendemic.[10] See Consolidated Compl. at ¶¶ 108, 145 (African Americans, Hispanics, Filipinos, and other Asians). Carroll, which dealt with exposure to a condition of confinement that is common to the surrounding community, provides support for Defendants position that exposing inmates to the risk of Valley Fever does not violate the Eight Amendment.

Spores which cause Valley Fever exist in the San Joaquin Valley and the fact that the prison is located in this area is the basis of Plaintiff's allegations. As in Carroll, prison officials have not created the spores in the soil and the claim is that Defendants are failing to provide a "maximally" safe environment. However, the Court finds no case law indicating that prison officials are required to provide an environment that is safer than that of the surrounding communities.

---

[10] Kern County's population is comprised of 9.6% of individuals over 65 years of age, 6.3% African American, 2.7% American Indian, 50.9% Hispanic, and 4.2% Asian. http://www.census.gov/quickfacts/#table/PST045214/06029,00. Fresno County's population is comprised of 10.9% of individuals over the age of 65, 5.9% African American, 3% American Indian, 51.6% Hispanic, and 10.5% Asian. http://quickfacts.census.gov/qfd/states/06/06019.html. Avenal is comprised of 4% of individuals over the age of 65, 10.5% African American, 1.2% American Indian, 71.8% Hispanic, and .7% Asian. http://quickfacts.census.gov/qfd/states/06/0603302.html.

Plaintiffs rely on several recommendations that have been made to relocate inmates out of the areas where Valley Fever spores are prevalent to reduce the incidence of Valley Fever to support their argument that Defendants were aware of the risk of harm. Plaintiffs stated that in June 2007, the Receiver made recommendations that were not implemented. (ECF No. 43 at ¶ 71.) On November 14, 2012, the Federal Receiver recommended several actions. (Id. at ¶ 78.) On April 29, 2013, the Federal Receiver promulgated a Valley Fever exclusion policy (revised on May 1, 2013) that recommended relocating inmates who are African-American, immunocompromised, and older than 55 years of age. (Id. at ¶ 80.) Although these studies and reports have recommended considering relocating inmates to reduce the risk of Valley Fever infection, neither the State of California nor the federal government have actually implemented any standards or restrictions on exposure to Valley Fever. Similarly, recommendations have not been issued to any sector of the general public to relocate out of the area.

No governmental agency has found that the San Joaquin Valley or the communities where these prisons are located are unsafe for general human habitation or for any specific group of individuals in the general population. Prison officials have no notice that they must provide safer conditions for the inmates than the residents in the area in which the prisons are located. Similarly, many of the plaintiffs are alleging that they are at a higher risk of developing disseminated infection, but non-imprisoned individuals of these same groups would be subjected to this same risk and society tolerates them residing in the San Joaquin Valley, even in these areas with the highest concentration of Valley Fever spores. It is not clearly established by decisional case law that environmental exposure of inmates to Valley Fever would violate the Eighth Amendment since it is a risk that is tolerated by society. Carroll, 255 F.3d at 472-73.

      iii.    <u>Lower court decisions in the Ninth Circuit demonstrate that whether and when exposure to Valley Fever would violate the Eighth Amendment is subject to debate</u>

      **a)**    **District Court decisions on Valley Fever**

The Court also looks to lower court decisions in the Ninth Circuit that have addressed whether environmental exposure to Valley Fever can state a claim to determine if Defendants would have notice that they are violating the rights of the inmates by housing them in endemic

areas. Recently, District Judge O'Neill found that the mere exposure to Valley Fever was sufficient to state a claim for deliberate indifference. Beagle v. Schwarzenegger, No. 14-cv-00430-LJO-SAB (E.D. Cal. July, 25, 2014) at ECF No. 74. However, as Judge O'Neill recognized in his opinion in Beagle, the weight of authority is that an inmate cannot state a claim for violation of the Eighth Amendment based on confinement in a location where Valley Fever is present. Beagle, No. 14-cv-00430-LJO-SAB (July 25, 2014) (ECF No. 74 at 9:18-10:13).

Since exposure to Valley Fever is clearly a risk that society chooses to tolerate, this Court has found that merely being housed in an area in which Valley Fever was prevalent is not sufficient to state a claim. See also Moreno v. Yates, No. 1:07-cv-1404-DGC, 2010 WL 1223131, at *2 (E.D. Cal. March 24, 2010) (granting summary judgment for defendants as society tolerates the risk of Valley Fever). Even today, courts considering this issue have held the same. See Williams v. Biter, No. 1:14-cv-02076-AWI-GSA PC, 2015 WL 1830770, at *3 (E.D. Cal. April 9, 2015 (finding that being housed at Kern Valley State Prison where Valley Fever spores are present insufficient to state a claim); Hines v. Youssef, No. 1:13-cv-00357-AWI-JLT, 2015 WL 164215, at *4 (E.D. Cal. January 13, 2015) ("Unless there is something about a prisoner's conditions of confinement that raises the risk of exposure substantially above the risk experienced by the surrounding communities, it cannot be reasoned that the prisoner is involuntarily exposed to a risk the society would not tolerate."); Sullivan v. Kramer, No. 1:13-cv-00275-DLB-PC, 2014 WL 1664983, at *5 (E.D. Cal. April 23, 2014) (being confined in an area where Valley Fever spores exist is insufficient to state a claim for deliberate indifference). The weight of authority shows that it is not clearly established that housing an inmate in an area where Valley Fever is prevalent would violate his Eighth Amendment rights. See Walker v. Andrews, No. 1:02-cv-05801-AWI-GSA-PC, 2011 WL 3945354, at *19 (E.D. Cal. Sept. 7, 2011) adopted by ECF No. 183 ("The law is clear that the fact that Plaintiff was confined in a location where [V]alley [F]ever spores existed which caused him to contract [V]alley [F]ever fails to state a claim under the Eighth Amendment.").

Courts within this district have differed on whether an inmate who is subject to a risk factor can state a claim for deliberate indifference. See Smith v. Brown, No. 1:12-cv-0238-AWI-

JLT (PC), 2012 WL 1999858, at *4 (E.D. Cal. June 4, 2012) (allegation of increased risk of Valley Fever due to asthma insufficient to state a claim); Jones v. Igbinosa, No. , at *3-4 (E.D. Cal. July 19, 2010) (allegation that African-American inmate at greater risk of contracting Valley Fever is insufficient to state a claim); Gilbert v. Yates, No. 1:09CV02050 AWI DLB, 2010 WL 5113116, at *4 (E.D. Cal. Dec. 9, 2010) subsequently aff'd, 479 F. App'x 93 (9th Cir. 2012) (inmate alleging risk factors for Valley Fever did not state a claim for deliberate indifference for failure to transfer him from PVSP); Hunter v. Yates, No. 1:07-cv-00151-AWI-SMS-PC, 2009 WL 233791, at *3 (E.D. Cal. January 30, 2009) (inmate alleging high risk of contracting Valley Fever states a claim under the low pleading standard); Humphrey v. Yates, No. 1:09-cv-00075-LJO-DLB (PC), 2009 WL 3620556, at * 3 (E.D. Cal. October 28, 2009) (finding allegation that inmate caught Valley Fever twice due to preexisting respiratory conditions is sufficient to state a claim); Barnhardt v. Tilton, No. 1:07-cv-00539-LJO-DLB (PC), 2009 WL 56004, at *4 (E.D. Cal. January 7, 2009) (inmate's allegation that his diabetes placed him at increased risk of contracting Valley Fever is insufficient to show a serious risk of harm to inmate's health).

More recent cases have found that an inmate claiming to be at an increased risk of contracting Valley Fever could state an Eighth Amendment claim. See Lua v. Smith, No. 1:14-cv-00019-LJO-MJS, 2014 WL 1308605, at *2 (E.D. Cal. Mar. 31, 2014) (first prong of deliberate indifference claim is satisfied where plaintiff identifies a factor responsible for increasing the risk of contraction or severity of infection); Sparkman v. California Dep't of Corrections and Rehabilitation, No. 1:12-cv-01444-AWI-MJS (PC), 2013 WL 1326218, at *3 (E.D. Cal. March 29, 2013) (inmate with chronic lung disease meets first prong of Eighth Amendment standard); Holley v. Scott, No. 1:12-cv-01090-MJS (PC), 2013 WL 3992129, at *3 (E.D. Cal. Aug. 1, 2013) (collecting cases). But many courts have found that the allegation of increased risk of contracting Valley Fever is insufficient to state a claim for violation of the Eighth Amendment. Smith v. Brown, No. 1:12-cv-0238-AWI-JLT (PC), 2012 WL 1574651, at *4 (May 3, 2012) (allegation that inmate was African-American is insufficient to state a claim); Harvey v. Gonzalez, No. CV 10-4803-VAP (SP), 2011 WL 4625710, at *3 (C.D. Cal. July 27, 2011) (even if inmate alleged that he was at high risk of contracting Valley Fever and defendants were aware of his risk that

would be insufficient to state a claim for violation of the Eighth Amendment); <u>Clark v. Igbinosa</u>, No. 1:10-cv-01336-DLB PC, 2011 WL 1043868, at *2 (E.D. Cal. March 21, 2011) (allegation that African-American inmate at greater risk of contracting Valley Fever is insufficient to state a claim); <u>Schroeder v. Yates</u>, No. 1:10-cv-00433-OWW-GSA PC, 2011 WL 23094, at *1, (E.D. Cal. January 4, 2011) (inmate alleging COPD and emphysema fails to state a claim); <u>James v. Yates</u>, No. 1:08-cv-01706-DLB (PC), 2010 WL 2465407, at * 4 (E.D. Cal. June 15, 2010) (allegation of higher risk due to medical conditions is not sufficient to state a claim where prison officials found inmate did not meet criteria for transfer).

      **b)**    <u>**Plata**</u> **order adopting cocci exclusion policy**

Plaintiffs also argue that the June 2013 order in <u>Plata v. Brown</u>, No. C01-1351 TEH, 2013 WL 3200587(N.D. Cal. June 24, 2013), supports their argument that housing inmates in endemic areas would violate the Eighth Amendment. In <u>Plata</u>, the court was considering the plaintiffs' request that the Receiver's cocci exclusion policy be implemented. The court ordered the CDCR to "adopt a modified version of the Receiver's cocci exclusion policy that reflects Defendants' agreement to transfer all inmates who are classified as 'high-risk' under the medical classification system and is consistent with the factors identified by the American Thoracic Society as creating an increased risk of severe cocci," this does not support Plaintiffs' argument that housing inmates in endemic areas would violate the Eighth Amendment.

In <u>Plata</u>, the court was considering the plaintiffs' request that the Receiver's cocci exclusion policy be implemented. The Court notes that <u>Plata</u> is a class action in which the prison health care system was found to be deficient and the Federal Receiver was appointed to oversee the system. The <u>Plata</u> court only considered the effects of Valley Fever on inmates and did not address whether housing inmates in the San Joaquin Valley where they are exposed to Valley Fever would violate the Eighth Amendment. Further, while a state may adopt a policy which is more generous than what the Constitution requires, <u>United States v. Heffner</u>, 420 F.2d 809, 812 (4th Cir. 1969), the policy itself does not establish that environmental exposure to Valley Fever violates the Eighth Amendment.

Further, it is rare that in the absence of "any published opinions on point or overwhelming

obviousness of illegality" that a court could "conclude that the law was clearly established on the basis of unpublished decisions only." Sorrels v. McKee, 290 F.3d 965, 971 (9th Cir. 2002). Review of the case law demonstrates that while the law in this area is in the process of becoming established, it is not clearly established even today that housing inmates, even those at an increased risk for developing disseminated disease, in an endemic area would violate the Eighth Amendment.

### c) Prior orders finding Defendants' are not entitled to qualified immunity

Finally, Plaintiffs cite to both Smith v. Schwarzenegger, No. 07-cv091547 SRB (PC), 2015 WL 106337 (E.D. Cal. Jan. 7, 2015), and this Court's previous Findings and Recommendations in the present case, which found that defendants are not entitled to qualified immunity based upon Helling. However, as discussed above, this Court finds Helling to be distinguishable as it did not deal with a naturally occurring condition to which a large segment of society is chooses to tolerate. Further, the Court finds that the right to be addressed was incorrectly defined in the prior findings and recommendation in this case. Therefore, the Court does not find the reasoning in this Court's prior Findings and Recommendations to be persuasive on the issue of qualified immunity in this instance.

Based upon the review of case law within this Circuit, it is subject to debate whether housing an inmate, even a high risk inmate, in an area where he would be exposed to Valley Fever would violate the Eighth Amendment.

### iv. Inmates are at an increased risk of developing disseminated disease

In this action, Plaintiffs are alleging that they are at an increased risk of developing disseminated disease due to their race, age, or health conditions. Plaintiffs argue that even if it is not clearly established that it would violate the Eighth Amendment to house any inmate in the endemic area, the fact that certain inmates are at a higher risk of harm is sufficient to place prison officials on notice that they cannot be housed in these areas. At the hearing on April 29, 2015, the Court inquired how Defendants would be on notice of when an increased risk would be sufficient to violate the Eighth Amendment. Plaintiffs responded that any increased risk is sufficient to place Defendants on notice that housing them in an endemic area would violate the

43

inmate's rights.

However, more than half of the residents of the affected areas fall with the groups that Plaintiffs identify as being at high risk. <u>See</u> footnote 8. In <u>Castro</u>, the Ninth Circuit recognized that "an officer is entitled to qualified immunity when the transition from a risk of *some* harm to a *substantial* risk of *serious* harm would not have been clear to a reasonable prison official." <u>Castro</u>, 2015 WL 1948146, at *7 (emphasis in original).

Additionally, as discussed above, courts are not clear on whether an inmate can state a claim or what would be required for an inmate to state a claim due to being at an increased risk of contracting Valley Fever. In this instance, the Court finds that it would not be clear to prison officials at what point an inmate's increased risk of developing disseminated disease due to his race or health conditions would rise to a substantial risk of serious harm.[11]

Therefore, Defendants are entitled to qualified immunity for housing inmates who are at an increased risk of developing disseminated disease in the endemic areas.

v.       <u>The Law is Not Clearly Established that Exposing an Inmate to the Environmental Risk of Valley Fever Violates the Eighth Amendment</u>

The Court finds no binding precedent, and lower court cases are unclear, on when or if it would be a violation of an inmate's Eighth Amendment rights to be housed in an area where Valley Fever is prevalent. While Plaintiff alleges that he is subjected to Cruel and Unusual Punishment by being housed in areas where Valley Fever is prevalent, at least a million individuals live in the San Joaquin Valley and are exposed to Valley Fever. Similarly, tens of thousands of individuals live, work, and raise families in the areas that are the most endemic.

Although some studies and reports have recommended considering relocating inmates to reduce the risk of Valley Fever infection, neither the State of California nor the federal government have implemented any standards or restrictions on exposure to Valley Fever. Similarly, the recommendations have not been issued to any sector of the general public to

---

[11] Similarly, while Plaintiffs allege that the rate of infection within the prison was higher than the rate of infection for residents within the surrounding community, it would not be clear at what point this would transition to a substantial risk to inmates that would violate the Eighth Amendment.

relocate out of the area. Prison officials could reasonably believe that since the government has not found it unsafe for non-imprisoned individuals to reside in areas in which Valley Fever spores are prevalent that it would not violate the Eighth Amendment to incarcerate inmates in these same areas. Carroll, 255 F.3d at 473.

Finally, it is clear that even for those individuals that are at a higher risk from Valley Fever, exposure to Valley Fever is a risk that society tolerates. The Seventh Circuit found it would be inconsistent to find that prisoners are entitled to a healthier environment than substantial numbers of non-imprisoned Americans. Carroll, 255 F.3d at 473. More than half of the individuals who reside in the endemic areas belong to the racial groups which Plaintiffs identify as high risk. See footnote 8.

The Court finds that it is not beyond debate whether housing inmates in prisons in areas endemic for Valley Fever, a naturally occurring soil-borne fungus which can lead to serious illness, would violate their rights under the Eighth Amendment. al-Kidd, 131 S. Ct. at 2083. For the reasons stated, the Court finds that the right alleged here is not clearly established. Defendants did not have fair notice that exposing inmates to an environmental risk of Valley Fever would violate the Eighth Amendment.[12] Chappell, 706 F.3d at 1057 (court is to consider whether an officer would have fair notice that his conduct was unlawful and that any mistake to the contrary would be unreasonable). Therefore, the Court finds that Defendants are entitled to qualified immunity on Plaintiffs' claims arising out of being housed at a prison where they were exposed to Valley Fever.[13] It is recommended that Defendants' motions to dismiss on the ground

---

[12] The Court is aware of two unpublished Ninth Circuit cases which addressed exposure to a contagious disease. Brigaerts v. Cardoza, 952 F.2d 1399, at *2 (9th Cir. 1992) (repeated exposure to contagious disease may violate the Eighth Amendment), and Muhammad v. Turbin, 199 F.3d 1332, at *1 (9th Cir. 1999) (exposure to chicken pox and tuberculosis). The Court finds these cases distinguishable. Contemporary standards of decency are violated where an individual with active chicken pox or tuberculosis exposes healthy individuals to the disease. While today's society does not tolerate healthy individuals being exposed to people with contagious diseases, Valley Fever is not a contagious disease and as discussed exposure to Valley Fever is a risk that society tolerates.

[13] Plaintiffs also allege that Defendants were deliberately indifferent by failing to implement mitigation measures to protect them from exposure to Valley Fever. However, for the reasons discussed above, Defendants are entitled to qualified immunity for not implementing mitigation measures. While Plaintiffs contend that Defendants should have implemented measures including "landscaping, paving, soil stabilization, limiting and strictly controlling excavation and soil-disturbing activities at the prisons, limiting inmate exposure outdoors during windy conditions, and providing respiratory protection for inmates who worked outdoors or went out under adverse conditions", inmates incarcerated at prisons in the San Joaquin Valley are exposed to the same environmental conditions that exist for

45

1    that they are entitled to qualified immunity be granted.

2           2.      Racial Discrimination Claims

3           Defendants argue that they are entitled to qualified immunity on the racial discrimination

4    claims because it was not "overwhelmingly obvious" to a reasonable public official that adopting

5    the race-neutral policy affirmatively recommended by the Plata Receiver would somehow violate

6    the law.  (ECF No. 89-2 at 19.)  However, Defendants are not entitled to qualified immunity at

7    this point based on the arguments that Defendants have raised.  Based on the arguments and

8    briefings that the parties have put forth before the Court, the Court will not engage in an in-depth

9    analysis of the qualified immunity on the Fourteenth Amendment claims.[14]

10          Plaintiffs in subclass no. 1 are members of an identifiable class for the Section 1981 and

11   1983 claims for equal protection and like punishment because they allege discrimination on the

12   basis of race.  Considering the allegations in the light most favorable to Plaintiffs, Plaintiffs allege

13   that Defendants treated African American inmates and members of subclass no. 1 differently than

14   other subclasses of persons with heightened susceptibility to the disseminated form of the

15   infection of the Cocci fungus, and failed to act even though they knew that African American

16   who are incarcerated at PVSP and ASP were nine times more likely to develop the chronic

17

18   those non-incarcerated individuals residing in the same areas.  The San Joaquin Valley is California's top agricultural
     producing region and three quarters of California's dairy cows are located here.  United States Environmental
19   Protection Agency, Region 9 Strategic Plan, 2011-14, located at http://www.epa.gov/region9/strategicplan/
     sanjoaquin.html.  The San Joaquin Valley is home of the worst air quality in the country and has some of the highest
20   rates of childhood asthma due to the unique topography and wind patterns.  Id.  The San Joaquin Valley contains
     large areas of exposed soil which is stirred up by wind and farming exposing residents to Valley Fever spores.  The
21   Court takes judicial notice of information displayed on government websites and news releases where neither party
     can dispute the accuracy of the information contained therein.  Daniels –Hall v. National Educ. Ass'n, 629 F.3d 992,
22   998-99 (9th Cir. 2010) (government websites); In re American Apparel, Inc. Shareholder Litigation, 855 F.Supp.2d
     1043, 1062 (C.D. Cal. 2012) ("Courts in the Ninth Circuit routinely take judicial notice of press releases.").  See
23   Blowing dust forecast for Valleys west side Tuesday, Fresno Bee, (October 13, 2014), http://www.fresnobee.com/
     2014/10/13/4177039_blowing-dust-forecast-for-valleys.html?rh=1; 14 Killed, 114 Hurt in I-5 Pileups:Traffic: More
24   than 100 vehicles collide in dust storm north of Coalinga, Los Angeles Times (November 30, 1991),
     http://articles.latimes.com/1991-11-30/news/mn-94_1_dust-storm (last visited May 18, 2015); Gusts shroud Valley in
25   dust as cold storm moves in, Fresno Bee (June 5, 2012), http://article.wn.com/view/2012/06/05/
     gusts_shroud_valley_in_dust_as_cold_storm_moves_in/ (last visited May 18, 2015).  As discussed herein, the Court
26   finds no precedent to place Defendants on notice that they are required to provide inmates with a safer environment
     that that of non-incarcerated individuals residing in the same area.
27

28   [14] The Court notes that the parties did not address what the "right" is for the racial discrimination claims.

disseminated cocci.  (ECF No. 43 ¶¶ 127-150.)  Plaintiffs allege that the Defendants had a racially discriminatory policy of allowing African-American inmates to be housed at PVSP and ASP even though African-American inmates were at a substantial risk of developing disseminated cocci and that Defendants had the authority and ability to stop this discriminatory policy.

Defendants allege that because the policy in 2007 involved input from the CDPH, a reasonable public official should be entitled to rely upon this policy that was in place at the time of the alleged acts or inactions by Defendants.  Defendants argue that because the race-neutral policy to exclude inmates from Central Valley prisons based on health criteria followed from the Plata Receiver's recommendations in a report it was not clearly established that they were violating Plaintiffs' rights.  However, Defendants are asking this Court to go beyond the qualified immunity analysis at this stage and find that Defendants are entitled to judgment on the pleadings on the racial discrimination claims based on the reasons that the officials made decisions concerning the policy.  Defendants are not entitled to qualified immunity merely because they are the officials who put this policy in place and that the Federal Receiver may have made recommendations that the Defendants followed.  Therefore, the Court finds that based upon the briefing and arguments before the Court at this time on the qualified immunity issue for the Fourteenth Amendment claim, Defendants' qualified immunity argument should be denied without prejudice.

### F.	Plaintiffs' Compliance with the California State Tort Claim Act

Defendants argue that Plaintiffs Lujan, M. Jackson, N. Johnson, and Taylor failed to plead presentation of any claim under the California Government Claims Act, and that Plaintiff Belton failed to present his claim to the California Victim Compensation and Government Claims Board within six months of accruing.  (ECF No. 89-2 at 20.)  Defendants also argue that Plaintiffs A. Jackson and L. Johnson filed suit after the statute of limitations.  (ECF No. 89-2 at 21.)  Further, Defendants argue that Plaintiffs A. Jackson, L. Johnson, Belton, and N. Johnson have failed to plead exhaustion of their administrative remedies.  (ECF No. 89-2 at 20-21.)  Defendants are effectively arguing that none of the named Plaintiffs have complied with California's Government Claims Act, and that therefore, the named Plaintiffs are barred from brining the state

law claims on behalf of the class.

Plaintiffs counter that a named Plaintiff can satisfy the requirements of the California Government Claims Act on behalf of the entire class.  (ECF No. 97 at 23.)  Plaintiffs contend that Plaintiff Belton satisfied the requirements of the California Government Claims Act on behalf of the entire class.  (ECF No. 97 at 24-25.)  Plaintiffs argue that Plaintiff Belton's claim form was timely filed and that the State waived the defense that the form was untimely filed.  (ECF No. 97 at 25.)

    1.  <u>Presentation to California Victims Compensation and Government Claims Board Within Six Months of Accruing</u>

The California Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board (VCGCB), formerly known as the State Board of Control, no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West).  A plaintiff is barred from filing a lawsuit against a public entity if he fails to timely present a claim for money or damages to that entity.  <u>State v. Superior Court (Bodde)</u>, 32 Cal. 4th 1234, 1239 (2004).  Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit, and an element of the cause of action.  <u>Bodde</u>, 32 Cal.4th at 1239; <u>Shirk v. Vista Unified School District</u>, 42 Cal.4th 201, 209 (2007).  To state a tort claim against a public employee, a plaintiff must allege compliance with the California Tort Claims Act.  Cal. Gov't Code § 950.6; <u>Bodde</u>, 32 Cal. 4th at 1243.  The failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a complaint to general demurrer for failure to state a cause of action.  <u>Bodde</u>, 32 Cal. 4th at 1243.

On April 22, 2015, the Defendants requested that the Court take judicial notice under Federal Rule of Evidence 201 of the VCGCB records for Claim No. G-608770 filed by Plaintiff L.T. Belton, which Plaintiffs referred to in the second amended complaint and in the opposition to Defendants' motion for judgment on the pleadings.  (ECF No. 43 ¶ 8; ECF No. 97 at 24-25.)  Defendant has attached to the request for judicial notice a certification from Eric Rivera, Custodian of Records for the Government Claims Program, that certifies that the documents are

1    true and correct copies of the documents constituting the record of the claim of Plaintiff Belton.

2    (ECF No. 99-1 at 1.)  Therefore, as it is not in dispute that these are the records of Plaintiff Belton

3    for Claim Number G- 608770, the Court will take judicial notice of these documents.

4         Defendants argue that Belton's claim was untimely.  However, Plaintiffs argue that the

5    Victims Compensation Claims Board did not notify Belton that his claim form was untimely

6    within the time provided by California Gov't Code § 911.3, and therefore, the State has waived

7    the defense that his claim form was untimely.  (ECF No. 97 at 25.)  Defendants assert that 911.3

8    does not apply because the Board did not return the claim "without further action," and Belton

9    had asserted claims relating to medical treatment "til this present time," so the VCGCB's

10   appropriately accepted the claim "only to the extent that it was presented no later than six months

11   from the accrual of the cause of action."  (ECF No. 98 at 10.)   California Gov't Code Section

12   911.3 states in pertinent part:

> (a) When a claim that is required by Section 911.2 to be presented
> not later than six months after accrual of the cause of action is
> presented after such time without the application provided in
> Section 911.4, the board or other person designated by it may, at
> any time within 45 days after the claim is presented, give written
> notice to the person presenting the claim that the claim was not
> filed timely and that it is being returned without further action. The
> notice shall be in substantially the following form:
>
> "The claim you presented to the (insert title of board or officer) on
> (indicate date) is being returned because it was not presented within
> six months after the event or occurrence as required by law. See
> Sections 901 and 911.2 of the Government Code. Because the claim
> was not presented within the time allowed by law, no action was
> taken on the claim.
>
> Your only recourse at this time is to apply without delay to (name
> of public entity) for leave to present a late claim. See Sections
> 911.4 to 912.2, inclusive, and Section 946.6 of the Government
> Code. Under some circumstances, leave to present a late claim will
> be granted. See Section 911.6 of the Government Code.
>
> You may seek the advice of an attorney of your choice in
> connection with this matter. If you desire to consult an attorney,
> you should do so immediately."
>
> (b) Any defense as to the time limit for presenting a claim described
> in subdivision (a) is waived by failure to give the notice set forth in
> subdivision (a) within 45 days after the claim is presented, except
> that no notice need be given and no waiver shall result when the
> claim as presented fails to state either an address to which the

49

person presenting the claim desires notices to be sent or an address of the claimant

On December 19, 2012, Belton filed his claim with the VCGCB. On January 11, 2013, the VCGCB wrote to Belton that his "claim is accepted only to the extent that it was presented no later than six months after the accrual of the cause of action." (ECF No. 99-1 at 20.) By sending the letter dated January 11, 2013, the VCGCB notified Belton that it was only accepting his claims to the extent that they complied with the time limit for presenting a claim, but the notice did not comply with subdivision (a) of California Gov't Code Section 911.3. Therefore, Defendants waived any defense as to the time limit in subdivision (a) of the California Gov't Code Section 911.3 for Plaintiff Belton presenting his claims. However, the Court must evaluate whether Plaintiff Belton's claim form to the VCGCB satisfies the Government Claims Act on behalf of the class.

A named plaintiff can satisfy the Government Claims Act on behalf of the class if the named plaintiff provides his own identifying information and any information to help identify the class and provides sufficient information to reasonably enable the public entity to investigate the merits of the claim and to settle it. City of San Jose v. Super. Ct., 12 Cal. 3d 447, 457 (1974).

Although Plaintiffs argue that Plaintiff Belton's written claim identifies that he is among a class of inmates who had contracted Valley Fever during and as a result of their incarceration at PVSP and ASP, the written claim is not sufficient to help identify the class. Even liberally construing Plaintiff Belton's written claim, he only stated "we" twice in his complaint, and in numerous other instances in the complaint stated his claims in terms of "I." (ECF No. 99-1 at 28-32.) Belton stated that Defendants "had refuse[d] to minimize the risk by taking extra caution and wet the soil before we are released[d] in the morning for our daily recreational activity on the yard" and that the Defendants failed to "keep the dust down from blowing the soil around in the air on the yard while we are outside getting our daily activity exercising." (ECF No. 99-1 at 31.) Therefore, Belton's written claim is insufficient to satisfy the Government Claims Act on behalf of the class.

Accordingly, Belton failed to plead presentation of timely government claims on behalf of

50

the class. Plaintiffs Lujan, M. Jackson, Taylor, and N. Johnson did not plead presentation of timely government claims. (ECF No. 43 at ¶¶ 3-9.) However, there are named Plaintiffs who did plead that they presented government claims to the VCGCB. (ECF No. 43 at ¶¶ 3, 7.) The complaint alleges that Plaintiffs A. Jackson and L. Johnson presented claims to the VCGCB within six months of accrual and Defendants do not contest this. (Id.) Therefore, there is at least one named Plaintiff who presented claims to the VCGCB within six months of accrual in accordance with California's Government Claims Act.[15] However, Defendants argue that these two named Plaintiffs did not comply with the statute of limitations for filing their suit, and therefore, they did not comply with the California Tort Claim Act.

2. Statute of Limitations

Plaintiffs allege that A. Jackson and L. Johnson did not comply with the statute of limitations requirement of the California Tort Claims Act. Pursuant to California Government Code Section 945.6(a)(2) an action must be commenced within six months of the date the written notice is personally delivered or deposited in the mail. A suit is commenced by filing a complaint with the court. Cal. Code Civ. Proc.§ 411.10. Pursuant to California Government Code, notice given by mail is deemed to have been presented and received at the time that it was deposited in the mail and "[a]ny period of notice and any duty to respond after receipt . . . is extended five days upon service by mail." Cal. Gov. Code § 915.2.

The complaint alleges that Plaintiff A. Jackson submitted a claim form to the VCGCB regarding his Valley Fever on March 23, 2012. (ECF No. 43 at ¶3.) The complaint alleges that the VCGCB rejected Plaintiff A. Jackson's government claim on May 17, 2012. (Id.) The complaint alleges that Plaintiff L. Johnson submitted a claim form to the VCGCB regarding his Valley Fever on March 26, 2012. (ECF No. 43 at ¶ 7.) However, Plaintiffs did not file this action until July 9, 2013, well beyond the six months required to comply with the Tort Claims

---

[15] The Court does not have information before it concerning whether Plaintiffs A. Jackson and L. Johnson's forms to the VCGCB were sufficient to provide information to help identify the class and to provide sufficient information to reasonably enable the public entity to investigate the merits of the claim and to settle it. See City of San Jose v. Super. Ct., 12 Cal. 3d 447, 457. Therefore, the Court is not able to decide whether Plaintiffs A. Jackson and L. Johnson provided sufficient information to the VCGCB to allow A. Jackson and L. Johnson to satisfy the Government Claims Act on behalf of the class.

51

Act. (ECF No. 43.) Although tolling may be available for the statute of limitations during the time a plaintiff is exhausting administrative remedies, Plaintiffs A. Jackson and L. Johnson did not allege in the complaint that they exhausted their administrative remedies. (ECF No. 43.)[16] Failure to comply with the California Tort Claim Act is fatal to Plaintiffs' cause of action. Hacienda La Puente Unified School Dist. of Los Angeles v. Honig, 976 F.2d 487, 495 (9th Cir. 1992). Therefore, Plaintiffs A. Jackson and L. Johnson did not comply with the California Tort Claim Act. Accordingly, none of the named Plaintiffs have pled compliance with the California Tort Claim Act on behalf of the class, and the Defendants' motion for judgment on the pleadings on the state law claims should be granted.[17]

### G. Leave to Amend

Plaintiffs request that they be granted leave to file a third amended complaint which they attached to their opposition to Defendants' motion for judgment on the pleadings. Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" Amerisource Bergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). However, courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile." Id.

As the Court has ruled that the Defendants are entitled to qualified immunity on Plaintiffs' Eighth Amendment claims, any amendment on the Eighth Amendment claims would be futile. Therefore, Plaintiffs should not be granted leave to file the third amended complaint that they submitted with their opposition to the motion for judgment on the pleadings, as the Plaintiffs did

---

[16] Plaintiffs will have the opportunity to file an amended complaint to address any of the deficiencies identified in these findings and recommendations.

[17] The Defendants also argue that Plaintiffs A. Jackson, L. Johnson, Belton, and N. Johnson did not plead that they exhausted their administrative remedies through the California inmate administrative appeal process. Plaintiffs concede that L. Johnson, Belton, and N. Johnson failed to plead compliance with the California inmate administrative appeal process, but Plaintiffs argue that these named Plaintiffs actually did exhaust the California inmate administrative appeal process. (ECF No. 97 at 26.) Plaintiffs ask the Court to grant them leave to amend so that they can specifically allege compliance with the requirement to plead exhaustion of administrative remedies. (Id.) The Court will permit the Plaintiffs the opportunity to amend their complaint in light of these findings and recommendations.

not have the benefit of these findings and recommendation if they are adopted by the District Judge. Therefore, Plaintiffs should be granted leave to file an amended complaint that reflects these findings and recommendations if these findings and recommendations are adopted by the District Judge.

## V.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion to for judgment on the pleadings be GRANTED IN PART AND DENIED IN PART as follows:

1. Defendants' motion for judgment on the pleadings for the claims against Edmund G. Brown, Jr. on the basis of failure to state a claim should be DENIED,

2. Defendants' motion for judgment on the pleadings for the claims against Jeffrey Beard on the basis of lack of standing and subject matter jurisdiction should be GRANTED;

3. Defendants' motion for judgment on the pleadings for the claims against P.D. Brazelton on the basis of lack of standing and subject matter jurisdiction should be GRANTED;

4. Defendants' motion for judgment on the pleadings for the claims of Plaintiffs A. Jackson, M. Jackson, and L. Johnson against James D. Hartley on the basis of lack of standing and subject matter jurisdiction should be DENIED;

5. Defendants' motion for judgment on the pleadings for the claims of Plaintiffs Lujan, Taylor, and Belton against Edmund G. Brown, Jr. on the basis of lack of standing and subject matter jurisdiction should be DENIED;

5. Defendants' motion for judgment on the pleadings on the claims for injunctive relief should be GRANTED without leave to amend;

6. Defendants' motion for judgment on the pleadings on the Eighth Amendment claims for damages on the basis of qualified immunity should be GRANTED without leave to amend;

7. Defendants' motion for judgment on the pleadings on the racial discrimination

claims for damages on the basis of qualified immunity should be DENIED WITHOUT PREJUDICE;

8. Defendants' motion for judgment on the pleadings on Plaintiffs' state law negligence claims should be GRANTED for failure to state a claim;

9. Plaintiffs' request to file the third amended complaint that is attached to Plaintiffs' opposition to defendants' motion for judgment on the pleadings should be DENIED; and

10. Plaintiffs should be GRANTED an opportunity to file an amended complaint to cure the deficiencies identified and described in this findings and recommendations. However, the amended complaint should not include any Eighth Amendment allegations.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __May 19, 2015__

_____
UNITED STATES MAGISTRATE JUDGE