1

2

3

4

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

5

6

7

8

9

10

| | |
|---|---|
| **ARTHUR DUANE JACKSON, et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**EDMUND G. BROWN, et al.,**<br><br>**Defendants.** | **1:13-cv-1055-LJO-SAB**<br><br>**CORRECTED[1] MEMORANDUM DECISION AND ORDER RE FINDINGS & RECOMMENDATIONS (Doc. 106) RE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. 89)** |

11

12

### a. The Constitutional Right at Issue.

Although it is beyond dispute that Plaintiffs have a constitutional right to safe conditions of

confinement, *see generally Farmer*, 511 U.S. 825, the level of detail to which a court must define the

contours of that right in the context of analyzing qualified immunity is less clear. The parties offer

various iterations of the constitutional right at issue with differing levels of specificity, and the Court can

conceive of other iterations.

Ultimately, however, these varying iterations of the constitutional right at issue in this case are

distinctions without any practical difference. The Court need not determine the full contours of the

Eighth Amendment in the Valley Fever context, what the constitutional right at issue is in these cases, or

whether Plaintiffs have pled a violation of their Eighth Amendment rights sufficiently.[2] As discussed

13

14

15

16

17

18

19

20

21

22

23

24

25

---

[1] The Court issues the following Memorandum Decision and Order withdrawing and amending only sections IV.C.3.a-b. of its September 17, 2015 Memorandum Decision and Order (Doc. 127). *Jackson v. Brown*, __ F. Supp. 3d __, 2015 WL 55220088, at *16-28 (E.D. Cal. Sept. 17, 2015).

[2] The Supreme Court has cautioned that following a "rigid" qualified immunity analysis "comes with a price": the "expenditure of scare judicial resources on difficult questions that have no effect on the outcome of the case." *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009). This is particularly true where "[a] decision on the underlying constitutional question in a § 1983 damages action . . . may have scant value when it appears that the question will soon be decided by a higher

1

below, under *any* definition of the constitutional right at issue in this case, the substantial and unsettled case law concerning Valley Fever within this district establishes that Defendants are entitled to qualified immunity from Plaintiffs' Eighth Amendment claim. This is a case where the Court can "rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." *Pearson*, 555 U.S. at 239. Accordingly, the Court skips the first step of the *Saucier* qualified immunity analysis.

**b. Defendants Did Not Violate Clearly Established Law.**

The second prong of the qualified immunity analysis requires the Court to determine whether the allegedly violated constitutional right was clearly established at the time that Defendants allegedly violated that right. *Mattos*, 661 F.3d at 442. Defendants must have had "'fair and clear warning' that their conduct [was] unlawful." *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) (citations omitted). In other words, the question is whether Defendants could have "reasonably but erroneously believed" that their conduct did not violate Plaintiffs' rights. *Id.* at 1074 (citing *Saucier*, 533 U.S. at 195).

Defendants seemingly argue that Plaintiffs' rights were first violated when Plaintiffs contracted Valley Fever. *See* Doc. 121 at 5 ("Given the status of district courts' decisional law at the time Plaintiffs allegedly contracted valley fever, Defendants are entitled to qualified immunity at the pleading stage.") (citation omitted). Plaintiffs, on the other hand, do not clearly provide a point at which they believe their constitutional rights at issue were first implicated.

As noted, although the SAC provides dates on which Plaintiffs developed disseminated Valley Fever while incarcerated at PVSP and/or ASP, *see id.* at ¶¶ 3-9, the SAC only states when two Plaintiffs, A. Jackson and N. Johnson, were committed to PVSP or ASP—Jackson was transferred to PVSP in July

court." *Id.* at 237-28. As it stands, it appears that the Ninth Circuit soon will have the opportunity to resolve the issue of whether Plaintiffs' Eighth Amendment rights were violated. *See Hines v. Youssef*, No. 1:13-cv-357 AWI JLT, 2015 WL 2385095 (E.D. Cal. May 18, 2015) (granting the defendants qualified immunity from the plaintiff's claim that they violated his Eighth Amendment rights by placing him in a Valley Fever-endemic prison, where he contracted the disease), *appeal docketed*, No. 15-16145 (9th Cir. June 8, 2015).

2009, and N. Johnson was transferred to ASP in May 2012. *See id.* at ¶¶ 91, 103. The SAC does not state when the other Plaintiffs were incarcerated in PVSP and/or ASP. *See id.* at ¶¶ 91-104.

This case, however, is brought on behalf of various inmates housed at PVSP or ASP at any time from July 8, 2009, to the present. SAC at ¶ 20. It is questionable whether July 2009 is the appropriate starting point for the qualified immunity analysis due to the uncertainties in the record, namely, the lack of clarity in the record concerning when Plaintiffs were housed at PVSP and/or ASP. It is difficult, for instance, to conclude that the inquiry appropriately begins in July 2009 when N. Johnson apparently was not incarcerated at either PVSP or ASP until May 2012.

Nonetheless, the Court's conclusion below that Defendants are entitled to qualified immunity would not be affected by looking at the state of the law at a time later than July 8, 2009. Regardless of whether the Court looked only to the state of the law as it existed in July 2009 or as it exists today, the Court would still conclude that the right at issue was not clearly established. *See Jones v. Hartley*, No. 1:13-cv-1590-AWI-GSA-PC, 2015 WL 1276708, at *2-3 (E.D. Cal. Mar. 19, 2015) (collecting cases); *Smith*, 2015 WL 3953367, at *3 (recognizing contrary conclusions in Valley Fever cases within this district). Thus, even if the Court looked at the state of the law at the earliest possible time (*i.e.*, July 2009) or at the latest possible time (*i.e.*, today), the Court's conclusion that Defendants are entitled to qualified immunity would be the same. *See Reza*, 2015 WL 4899122, at *7 (assessing state of law on date on which the plaintiff allegedly was arrested unlawfully).

This is so because the circumstances in which an inmate's exposure to cocci while incarcerated may support an Eighth Amendment claim are not clear. As the F&Rs correctly recognized, no binding Supreme Court or Ninth Circuit precedent squarely addresses the issue. Doc. 106 at 30. The Ninth Circuit has touched on the issue only in brief, undeveloped, and unpublished memorandum decisions.

In *Smith v. Schwarzenegger*, No. CV 1-07-1547-SRB, 2009 WL 900654, at *1 (E.D. Cal. Mar. 31, 2009), *rev'd*, 393 Fed. App'x 518 (9th Cir. 2010), the plaintiff brought, among other claims, an Eighth Amendment claim asserting his right to be free from cruel and unusual punishment. In that claim,

the plaintiff alleged that he was held in Kern Valley State Prison ("KVSP"), which is "located in the San Joaquin Valley where [he is] subjected to the risk of contracting valley fever, in violation of the Eighth Amendment." *Smith*, 2009 WL 900654, at *1. The plaintiff alleged that his being housing at KVSP posed an unconstitutional threat to his health and safety. *Smith*, No. CV 1-7-1547-SRB, Doc. 21 at 7 ("Myself and other inmates . . . in California State Prisoners located in the San Joaquin Valley . . . are being forcibly subjected to contracting . . . Valley Fever"). The plaintiff also alleged that African-Americans, such as himself, and other ethnic groups "are extremely susceptible to contracting Valley Fever." *Id.*

Notably, the plaintiff did not allege that he had contracted Valley Fever; he only alleged that he "*may have contracted* Valley Fever but will not know for" many years if he contracted the disease. *Id.* (emphasis added). The plaintiff further alleged that the defendants "have failed to act to remove [him] . . . out of the endemic area where . . . inmates have been infected by Valley Fever and have [died] from Valley Fever." *Id.* at 10. Thus, the plaintiff claimed that his Eighth Amendment rights had been violated "not only by possible present harm but by possible future harm, arising out of exposure to San Joaquin Valley Fever" and the defendants' failure to remove inmates from prisons located in areas endemic to Valley Fever. *Id.* at 10-15.

Visiting District Judge Bolton found that:

Plaintiff has failed to show that any of the named Defendants were deliberately indifferent to a serious risk of harm to Plaintiff's health. Plaintiff does not allege that Defendants were aware of a particular threat to Plaintiff's health or that Plaintiff has been harmed as the result of Defendants' actions or failure to act. Plaintiff alleges only that Defendants are aware of the general presence of valley fever in the areas in which Plaintiff is housed and that Plaintiff may contract valley fever. This is insufficient to establish an Eighth Amendment violation.

*Smith*, 2009 WL 900654, at *2. Accordingly, the claim was dismissed with prejudice. *Id.*

On appeal, the Ninth Circuit reversed in an unpublished, one-page memorandum decision. *Smith v. Schwarzenegger*, 393 Fed. App'x 518, 519 (9th Cir. 2010). The Ninth Circuit observed the district court dismissed the claim "because it determined that [the plaintiff] failed to allege facts demonstrating

that the defendants were deliberately indifferent to a serious risk to his health." *Id.* The court held that "[i]n dismissing with prejudice, the district court erred because it is not beyond doubt that [the plaintiff] could prove no set of facts in support of his claims that would entitled [*sic*] him to relief." *Id.* (citing *Helling*, 509 U.S. at 25 (a prisoner "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference, exposed him to levels of [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health")). The Ninth Circuit therefore vacated and remanded the case "with instructions to allow [the plaintiff] the opportunity to amend his complaint to allege facts demonstrating that the defendants are aware of a substantial risk to [his] health and have not taken action to prevent or minimize that risk." *Id.*[3]

Similarly, the Ninth Circuit reversed this Court with a one-page decision in *Johnson v. Pleasant Valley State Prison*, 505 Fed. App'x 631 (9th Cir. 2013). In *Johnson*, the plaintiff brought one claim under § 1983 in which he alleged that his exposure to and contraction of Valley Fever while at PVSP violated his Eighth Amendment rights. *Johnson*, 2012 WL 1297380, at *1. The Magistrate Judge issued F&Rs screening the complaint and summarized the plaintiff's allegations in part, as follows:

---

[3] On remand, the plaintiff filed a fourth amended complaint against Cate, James Yates, the former warden of PVSP, Jeanne Woodford, the former Secretary of CDCR, and "John Doe Appeals Coordinator," among other defendants. *See Smith*, No. 1:07-cv-1547-SRB, Doc. 65 at 1. Judge Bolton summarized the allegations underlying that claim as follows:

> Plaintiff alleges that his Eighth Amendment rights were violated when he was housed in an area with a known valley fever epidemic. Plaintiff alleges that he is particularly susceptible to valley fever because he is African-American and has tuberculosis and hepatitis C. Plaintiff further states that he was recently informed that he has now contracted valley fever and that because of his hepatitis C, he cannot take the valley fever medication. Plaintiff claims that Defendants were aware of the severe risk to his health that results from housing him in this area, but failed to transfer him to another facility . . . .

> Plaintiff claims that Defendants Cate and Woodford violated his Eighth Amendment rights when they failed to develop policies for moving high risk inmates, such as Plaintiff, out of prisons located in areas known to have high incidences of valley fever. Plaintiff further claims that while housed at the Pleasant Valley State Prison, he filed a grievance regarding his susceptibility to valley fever and requesting a transfer, but that Defendant Appeals Coordinator was deliberately indifferent to a risk to Plaintiff's health when he informed Plaintiff that he would not process the grievance unless Plaintiff had already contracted valley fever. Plaintiff claims that Defendant Appeals Coordinator's refusal to process the grievance hindered his ability to grieve the issue at any of his later housing assignments. Finally, Plaintiff claims that Defendant Yates was aware of the risk of Plaintiff contracting valley fever, but did not transfer him, and that Defendant Yates developed a policy requiring Plaintiff to "contract valley fever before he can receive relief from exposure to valley fever."

*Id.* at 3, 6. Judge Bolton found that these allegations, "[v]ery liberally construed . . . adequately stated Eighth Amendment claims against Defendants Cate, Woodford, Yates, and John Doe Appeals Coordinator." *Id.* at 6.

> Plaintiff . . . is incarcerated at [PVSP], and brings this action against Defendants . . . alleging deliberate indifference in violation of the Eighth Amendment. Shortly after being transferred to PVSP on August 20, 2010, Plaintiff began experiencing flu-like symptoms and was eventually diagnosed with Valley Fever. Plaintiff alleges that Defendants were aware through CDCR memorandums that PVSP and seven other facilities were constructed in "hyperendemic" areas. Defendants allegedly have ignored a threat to Plaintiff, and every other prisoner who is housed at PVSP, by placing them where they are exposed to "environmental hazards" in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

*Id.* The Magistrate Judge found that the plaintiff failed to state a claim under the Eighth Amendment, reasoning:

> To state a claim that the presence or prevalence of Valley Fever at PVSP constituted a danger to Plaintiff's health, Plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to him . . . . Even if the risk of contracting Valley Fever is higher at PVSP than in other areas of the state, the Court declines to find that, due to its location, the prison itself constitutes a substantial risk of harm to inmates . . . There is no support for such a sweeping proposition, and the Court finds that Plaintiff's Eighth Amendment claim arising from the mere fact that he is being housed at PVSP is not cognizable under section 1983.

*Id.* at *3 (citations omitted).

Plaintiff filed objections to the F&Rs. *Id.* at Doc. 14. Citing *Farmer*, 511 U.S. 825, and *Helling*, 509 U.S. 25, the plaintiff argued that the defendants exhibited deliberate indifference to him by placing him at an excessive risk of contracting Valley Fever while incarcerated at PVSP. *Id.* at 2-3. This Court adopted the Magistrate Judge's F&Rs in full and dismissed the plaintiff's sole Eighth Amendment claim. *See* No. 1:11-CV-191-LJO-BAM PC, *Johnson v. Pleasant Valley State Prison*, Doc. 15.

The Ninth Circuit reversed, holding that

> dismissal of [the plaintiff's] action was improper at this early stage because [the plaintiff] alleged that prison officials were aware that inmates' exposure to valley fever posed a significant threat to inmate safety yet failed to take reasonable measures to avoid that threat . . . . *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (a prison official violates the Eighth Amendment prohibition against inhumane conditions of confinement if he or she knows of a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm).

*Johnson*, 505 Fed. App'x at 632.

In *Johnson*, the Ninth Circuit "express[ed] no opinion as to the sufficiency or merit of [the plaintiff's] allegations." *Id.* And, as the F&Rs observed, the Ninth Circuit in *Smith* provided "no

discussion of what would be required to state a claim under the Eighth Amendment." Doc. 106 at 30 n.6;

*Smith*, 393 Fed. App'x at 519. Accordingly, the Court finds that *Johnson* and *Smith* do not clearly

establish the right at issue in this case, particularly given that it is a "rare instance in which, absent any

published opinions on point or overwhelming obviousness of illegality, [a court] can conclude that the

law was clearly established on the basis of unpublished decisions only." *Sorrels v. McKee*, 290 F.3d

965, 971 (9th Cir. 2002).[4] In short, the Ninth Circuit's Valley Fevers decisions could not have put

Defendants on notice that their conduct was unlawful.

      In the absence of controlling authority, a defendant nonetheless may not be entitled to qualified

immunity if the illegality of the defendant's conduct was overwhelmingly obvious, *id.*, or "a consensus

of cases of persuasive authority" would have put the defendant on notice that his/her conduct was

unlawful. *Wilson v. Layne*, 526 U.S. 603, 617 (1999). The F&Rs contain a thorough review of Valley

Fever cases in this district. *See* F&Rs at 40-42. Simply put, those cases show that there has been

longstanding disagreement among the judges of this district as to whether and under what circumstances

inmates housed at prisons in the San Joaquin Valley, where Valley Fever is endemic, may state an

Eighth Amendment claim for being exposed to Valley Fever spores while incarcerated. *See id.*

      This disagreement has led to diametrically opposed conclusions at times. Critically, judges have

---

[4] This conclusion is further reinforced by the Ninth Circuit's decision in *Holley v. Scott*, 576 Fed. App'x 670 (9th Cir. 2014), another one-page memorandum decision addressing an Eighth Amendment claim premised on the plaintiff-inmate's exposure to Valley Fever spores while incarcerated. In that case, the Magistrate Judge screened the plaintiff's second amended complaint, which alleged an Eighth Amendment claim based on his exposure to Valley Fever spores while incarcerated at PVSP, and dismissed the claim without leave to amend. *Holley v. Scott*, No. 1:12-cv-1090-MJS (PC), 2013 WL 3992129, at *5 (E.D. Cal. Aug. 1, 2013). The plaintiff alleged that he was an African-American at medically high risk of contracting Valley Fever because of his race and health status. *Id.* at *1. The Magistrate Judge found that the plaintiff failed to allege facts demonstrating that the defendants acted with deliberate indifference because the plaintiff did not allege that the defendants were aware of the risks posed by Valley Fever spores at PVSP. *Id.* at *5. On appeal, the Ninth Circuit affirmed. *Holley*, 576 Fed. App'x at 670 (citing *Farmer*, 511 U.S. at 837). Although *Smith* and *Johnson* involved materially similar allegations, the Ninth Circuit's reversals in those cases perhaps can be explained by the fact that they involved original complaints dismissed without leave to amend, whereas *Holley* involved a second amended complaint filed after the Magistrate Judge had "twice previously instructed Plaintiff on the legal standard and given him opportunity to allege facts which meet it," yet the second amended complaint failed to do so. *Holley*, 2013 WL 3992129, at *5. In addition, the plaintiff in *Holley* had satisfied the first, objective prong of his Eighth Amendment claim, but had failed on the second, subjective prong of the claim. *See id.* at *4-5; *Holley*, Fed. App'x at 670 ("The district court properly dismissed Holley's action because Holley failed to allege facts showing that defendants were deliberately indifferent to a risk of Holley contracting Valley Fever by housing him at Pleasant Valley State Prison.") (citation omitted).

disagreed as to whether allegations that an inmate's ethnicity increases the risk of contracting Valley

Fever and developing disseminating Valley Fever states an Eighth Amendment claim.[5] Judges also have

disagreed as to whether an inmate's allegations that medical conditions increase the risk of contracting

Valley Fever and developing disseminated Valley Fever states an Eighth Amendment claim.[6] Notably,

---

[5] Compare, e.g., *Smith v. Brown*, No. 1:12-cv-238-AWI-JLT (PC), 2012 WL 1574651, at *3-4 (E.D. Cal. May 3, 2012) (holding that African-American plaintiff's allegations that (1) he was exposed to Valley Fever while incarcerated at PVSP, a "hyperendemic area" experiencing an "outbreak of illness"; (2) African-Americans are more susceptible to Valley Fever; and (3) the defendants knew of Valley Fever risks but failed to act were insufficient to state Eighth Amendment claim because the defendants could not "be held liable for housing Plaintiff in an area where there is a potential to be exposed to Valley Fever spores"); *Clark v. Igbinosa*, No. 1:10-cv-1336-DLB PC, 2011 WL 1043868, at *2 (E.D. Cal. Mar. 21, 2011) (holding that the African-American plaintiff's allegations that (1) African-Americans are the highest risk group for disseminated Valley Fever and (2) being housed at PVSP did not state Eighth Amendment claim because "[g]oing to an area which contains valley fever and contracting valley fever are not sufficient to state an Eighth Amendment claim"); *James v. Yates*, No. 1:08-cv-1706-DLB PC, 2010 WL 2465407, at *3-4 (E.D. Cal. June 15, 2010) (same); *Moreno v. Yates*, No. 1:07-cv-1404-DGC, Doc. 1 at 9-10, 2010 WL 1223131, at *2 (E.D. Cal. Mar. 24, 2010) (granting summary judgment against plaintiff-inmate who contracted Valley Fever at PVSP and who alleged certain racial groups are more susceptible to developing disseminating Valley Fever because "society plainly tolerates the health risks" posed by Valley Fever at PVSP); *King v. Avenal State Prison*, No. 1:07-cv-1283-AWI-GSA (PC), 2009 WL 546212, at *4 (E.D. Cal. Mar. 4, 2009) ("[N]o courts have held that exposure to Valley Fever spores presents an excessive risk to inmate health") *with, e.g.*, *Chaney v. Beard*, No. 1:14-cv-369-MJS, 2014 WL 2957469, at *3 (E.D. Cal. June 30, 2014) ("Plaintiff alleges that he is an African American male and is therefore at an increased risk of harm from Valley Fever. This is sufficient to satisfy the first element of Plaintiff's Eighth Amendment claim.").

[6] Compare, e.g., *Moreno*, 2010 WL 1223131, at *2 (granting summary judgment against plaintiff-inmate because "society plainly tolerates the health risks" posed by Valley Fever at PVSP); *Gilbert v. Yates*, No. 1:09-cv-2050-AWI-DLB, 2010 WL 5113116, at *1, 3 (E.D. Cal. Dec. 9, 2010) (plaintiff with asthma, pulmonary conditions, and hepatitis C who contracted Valley Fever while incarcerated at PVSP did not state Eighth Amendment medical needs claim because even "[a]ssuming that the risk of contracting Valley Fever is higher at PVSP than in other areas of the state and that the disease is fatal in some cases, the Court declines to find that the prison itself, due to its location, constitutes a substantial risk of harm to inmates"), *aff'd*, 479 Fed. App'x 93 (9th Cir. 2012); *Schroeder v. Yates*, No. 1:10-cv-433-OWW-GSA PC, 2011 WL 23094, at *1 (E.D. Cal. Jan. 4, 2011) (inmate with emphysema and chronic obstructive pulmonary disease could not state claim for exposure to Valley Fever spores while incarcerated at PVSP); *Ayala v. Yates*, No. 1:10-cv-50-MJS (PC), 2011 WL 4527464, at *3 (E.D. Cal. Sept. 28, 2011) ("Exposure to [Valley Fever] at PVSP is not in and of itself an excessive risk to inmate health; Defendants had no duty to take steps to reduce the risk."); *Miller v. Brown*, No. 1:12-cv-1589-LJO-BAM PC, 2013 WL 6712575, at *6 (E.D. Cal. Dec. 18, 2013) (dismissing inmate's Eighth Amendment claim, in part, because he did not "indicate if he in fact contracted Valley Fever") *with, e.g.*, *Whitney v. Walker*, No. 1:10-cv-1963 DLB PC, 2012 WL 893783, at *4 (E.D. Cal. Mar. 15, 2012) (plaintiff's allegation that his immune system was compromised by cancer stated Eighth Amendment claim for contraction of Valley Fever while incarcerated at ASP); *Owens v. Trimble*, No. 1:11-cv-1540-LJO-MJS (PC), 2012 WL 1910102, at *2 (E.D. Cal. May 25, 2012) ("Plaintiff has alleged that his asthma increases the risk of infection [of Valley Fever] and thus satisfies the first element of his Eighth Amendment claim."); *Sparkman v. Calif. Dep't of Corrections and Rehab.*, No. 1:12-cv-1444-AWI-MJS (PC), 2013 WL 1326218, at *3 (E.D. Cal. Mar. 29, 2013) ("Exposure to Valley Fever with such a preexisting lung condition is also a serious medical condition sufficient to satisfy the first prong of an Eighth Amendment claim based on Valley Fever exposure.") (citations omitted); *Wood v. Brown*, No. 1:11-cv-1846-RRB, 2013 WL 1759099, at *2 (E.D. Cal. Apr. 24, 2013) (holding that inmate could potentially state Eighth Amendment claim for being transferred to ASP where he contracted Valley Fever if officials responsible for transfer were properly named); *see also Beagle v. Schwarzenegger*, __ F.3d __, 2014 WL 9866913, at *10 (E.D. Cal. 2014) (disagreeing with findings and recommendations and holding that inmates "need not demonstrate that they are at a higher risk of contracting Valley Fever or a more severe form of the disease to state an Eighth Amendment claim"); F&Rs at 14 (finding that Plaintiffs stated Eighth Amendment claim against Governor Brown); *see also Borquez v. Arpaio*, No. CV 07-226-PHX-DGC (JCG), 2007 WL 625925, at *3 (D. Ariz. Feb. 26, 2007) (holding that plaintiff-inmate's allegation "that he has been exposed to asbestos and valley fever" while incarcerated failed to state Eighth Amendment claim).

1    Plaintiffs acknowledge both of these instances of disagreement. *See* Doc. 118 at 31-32.

2        The Court acknowledges that not all Valley Fever cases concern the same factual allegations or

3    the same disposition for the same reasons. Unlike Plaintiffs here, some plaintiffs in Valley Fever cases

4    have simply alleged their constitutional rights were violated because they contracted Valley Fever while

5    incarcerated. *See, e.g.*, *King*, 2009 WL 546212, at *4 ("[T]o the extent that Plaintiff is attempting to

6    pursue an Eighth Amendment claim for the mere fact that he was confined in a location where Valley

7    Fever spores existed which caused him to contract Valley Fever, he is advised that no courts have held

8    that exposure to Valley Fever spores presents an excessive risk to inmate health"). Other cases have

9    involved inmates who, unlike Plaintiffs, had no increased risk factors for contracting Valley Fever or

10   disseminated Valley Fever. *See, e.g.*, *Ayala*, 2011 WL 4527464, at *1; *see also Gaona v. Yates*, No.

11   1:09-cv-999-SKO PC, 2010 WL 2843163, at *3 (E.D. Cal. July 19, 2010) (finding plaintiff could not

12   state Eighth Amendment claim because he only exhibited "flu-like symptoms" when he contracted

13   Valley Fever while incarcerated at PVSP). And in some cases, the plaintiff did not allege the defendant's

14   (or defendants') acts or omissions caused the plaintiff to be exposed to a substantial risk of Valley Fever.

15   *See, e.g.*, *Tholmer v. Yates*, No. 1:06-cv-1403-LJO-GSA, 2009 WL 174162, at *3 n.3 (E.D. Cal. Jan. 26,

16   2009) ("Plaintiff does not allege that the acts or omissions of Defendants have caused an excessively

17   high risk of contracting valley fever at PVSP.").

18       Some cases, however, involved allegations that are materially identical to Plaintiffs' allegations.

19   In *Moreno*, for instance, the plaintiff contracted Valley Fever in 2006 while housed at PVSP in. 07-cv-

20   1404-DGC, Doc. 1 at 7. The plaintiff alleged the defendants knew that (1) PVSP was in a

21   "hyperendemic" location; (2) "[p]eople with weakened immune systems and of certain racial groups are

22   susceptible [to] developing . . . disseminated valley fever"; (3) "the infection rate among prisoners is 38

23   times greater than for residents of Coalinga and 600 times greater than for residents of Fresno county";

24

25

(4) that there was "a high probability" that plaintiff would be infected with Valley Fever; and (5) the defendants had not "done anything to protect [his] health and personal safety." *Id.* at 7-18. The court granted the defendants' motion for summary judgment, reasoning that "[b]y placing a prison and other extensive facilities in the PVSP location, attended by prison employees, officials, and support personnel, as well as inmates, society plainly tolerates the health risks of that location." *Moreno*, 2010 WL 1223131, at *2.

In *Jones v. Igbinosa*, the plaintiff, who contracted Valley Fever while incarcerated at PVPS, alleged that PVSP "is [in] an epidemic area and that Blacks Afro-Americans and Filipinos are at greater risk of complications from [Valley Fever]." No. 08-cv-163-LJO-SKO PC, 2010 WL 2838617, at *2 (E.D. Cal. July 19, 2010), *adopted in full*, 2009 WL 483224 (E.D. Cal. Feb. 25, 2009), *aff'd*, 467 Fed. App'x 604 (9th Cir. 2012). The court dismissed the complaint based on, among other things, a finding that "the risk posed by valley fever was [not] 'sufficiently serious'" because the plaintiff did not allege that "he suffered any serious life threatening complications from the disease," and alleged that "'[i]n most cases, the infection . . . is usually handled by the body without permanent damages." *Id.* at *3.

The plaintiff's allegations in *Ayala* were largely the same. *See* 2011 WL 4527464, at *1. The court dismissed the plaintiff's Eighth Amendment claim without leave to amend on the ground that "Plaintiff's claim that the Defendants are liable because they were aware of the risk and did not act to mitigate the likelihood of infection does not state an actionable claim." *Id.* at *3. The court further held that "[e]xposure to the disease at PVSP is not in and of itself an excessive risk to inmate health; Defendants had no duty to take steps to reduce the risk." *Id.* The court therefore concluded that the plaintiff "cannot state a cognizable claim based on the fact that he was exposed to Valley Fever at PVSP." *Id.*

In *Smith v. Brown*, the plaintiff, who contracted Valley Fever in 2009 while incarcerated at PVSP, alleged as follows:

Plaintiff contends that "black inmates in general are highly susceptible to Valley Fever."  He also

claims that each of the defendants was aware that Plaintiff was being sent to a "hyperendemic" area institution, but refused to warn him of such a risk. Plaintiff alleges that Defendants failed to follow directions set forth in a November 20, 2007 Memorandum regarding "Exclusion of Inmate–Patients Susceptible to Coccidioidomycosis from Highest Risk Area Institutions" that would have prevented him from acquiring Valley Fever. Plaintiff claims Defendants' actions and failures to act violated the Eighth Amendment.

2012 WL 1574651, at *3. Observing that "[c]ourts have found that claims like Plaintiff's which allege Eighth Amendment violations for contracting Valley Fever are insufficient to establish an Eighth Amendment violation," the court held "Defendants cannot, therefore, be held liable for housing Plaintiff in an area where there is a potential to be exposed to Valley Fever spores." *Id.* at *4.

In *Cooper v. Igbinosa*, the plaintiff, a diabetic incarcerated at PVSP, failed to state an Eighth Amendment claim. 2012 WL 5186660, at *2 (E.D. Cal. Oct. 17, 2012). The plaintiff alleged:

From 2001 through 2005, soil at PVSP was disturbed greatly for the construction of a mental health hospital and a segregation unit. Defendant Yates worked at PVSP beginning in October 2003. He was aware of the presence of valley fever in the area. Defendants Yates and Igbinosa are responsible for all inmates' health and safety. During the construction, Defendants had notice of an increase in valley fever cases amongst the inmates at PVSP, from 80 in 2003, 66 in 2004, 187 in 2005, and 1145 in 2006. Valley fever is a disease arising from spores found near the surface of soil, or in the air when the soil is disturbed. Defendants did not take any corrective measures or give fair notice regarding the outbreak of valley fever from 2003 through 2006, such as preventing or erecting barriers for blowing dirt, educating inmates and staff, increasing ground cover, advising inmates to stay indoors, wet the ground, or give out masks. Plaintiff is diabetic. In June or July of 2006, Plaintiff became sick and went to the medical on B-yard at PVSP . . . . Plaintiff was hospitalized for weeks because of valley fever, suffering chronic breathing problems, acute coughing, severe weight loss, and chest and heart problems. Plaintiff remained under doctor care for valley fever through 2010.

The court dismissed the plaintiff's claim, finding that the plaintiff had "not sufficiently alleged facts which indicate that the harm Plaintiff risked was an excessive risk of serious harm." *Id.* at *2. Although the plaintiff had "alleged facts which indicate that the chance of contracting valley fever increased during the construction period," he had "not alleged facts which indicate that this increase in risk was excessive." *Id.* at *2; *see also Barnhardt v. Cate*, No. 1:10-cv-1351-LJO-GBC (PC), 2011 WL 2446372, at *5 *E.D. Cal. June 15, 2011) (allegation that diabetes made the plaintiff more susceptible to contracting Valley Fever did not support Eighth Amendment claim).

For similar reasons, the court dismissed without leave to amend the plaintiff's Eighth

Amendment claim in *Harvey v. Gonzalez*, No. CV 10-4803-VAP (SP), 2011 WL 4625710 (C.D. Cal. July 27, 2011), *adopted in full*, 2011 WL 4625700 (C.D. Cal. Oct. 5, 2011). The plaintiff alleged his exposure to Valley Fever while incarcerated at PVSP violated his Eighth Amendment rights. *Id.* at *2. The plaintiff alleged that African-Americans are at a "far greater risk of coming down with [Valley Fever] based on their immune systems." *Id.* at *1. The court held that "[m]ere exposure to [cocci] is insufficient to constitute an excessive risk of harm to [the plaintiff's] health." *Id.* at *3. Although the plaintiff's ethnicity was unknown, the court held that, even if plaintiff were able to allege that he was an African-American and that the defendants knew African-Americans were at higher risk of contracting Valley Fever, "that still would be insufficient to state a claim that defendants deliberately exposed [him] to an excessive risk of harm by housing him at PVSP." *Id.*

In *Gilbert*, the plaintiff, an inmate at PVSP who alleged his asthma, pulmonary conditions, and hepatitis C rendered him more vulnerable to Valley Fever, failed to state a claim based on his exposure to and contraction of Valley Fever while incarcerated at PVSP. 2010 WL 5113116, at *1, 3. The court reasoned that even "[a]ssuming that the risk of contracting Valley Fever is higher at PVSP than in other areas of the state and that the disease is fatal in some cases, the Court declines to find that the prison itself, due to its location, constitutes a substantial risk of harm to inmates."[7] *Id.* at *3.

Other judges, however, have found that "the first prong of an Eighth Amendment claim is satisfied where the plaintiff has identified a factor responsible for either increasing the risk of contraction [of Valley Fever] or the severity of infection." *Chaney v. Beard*, No. 1:14-cv-369-MJS, 2014 WL 2957469, at *3 (E.D. Cal. June 30, 2014). African-American ethnicity has been accepted as an increased risk factor, as have various medical conditions, particularly those that affect an individual's immune system. *See id.* (collecting cases); *see also Hunter v. Yates*, No. 1:07-cv-151-AWI-SMS-PC, 2009 WL 233791, at *3 (E.D. Cal. Jan. 30, 2009) (plaintiff alleging he "was exposed to a high risk of

---

[7] The Court notes that the Ninth Circuit apparently rejected this logic in *Johnson*, 505 Fed. App'x 631.

1   contracting valley fever" stated claim "[u]nder minimal federal notice pleading standards"); *Thurston v.*

2   *Schwarzenegger*, No. 1:08-cv-342-AWI-SMS PC, 2008 WL 2020393, at *1 (E.D. Cal. May 9, 2008)

3   (plaintiff stated claim based on allegations that "his medical condition puts him at risk for contracting

4   Valley Fever").

5          Given this obvious, legitimate, and reasonable disagreement among judges, the Court finds that

6   Defendants are entitled to qualified immunity from Plaintiffs' Eighth Amendment claim, regardless of

7   how its underlying constitutional right is defined. Even assuming Defendants' conduct was unlawful in

8   this case—an issue which the Court need not and does not decide—the disagreement among judges with

9   regard to analogous Valley Fever cases brought by inmates in San Joaquin Valley prisons establishes

10  that the right at issue here was not sufficiently clear such that Defendants had "'fair warning' that their

11  conduct was unlawful." *Flores*, 324 F.3d at 1137. "If judges thus disagree on a constitutional question, it

12  is unfair to subject [public officials] to money damages for picking the losing side of the controversy."

13  *Wilson*, 526 U.S. at 618; *see also Bahrampour v. Lampert*, 356 F.3d 969, 977 (9th Cir. 2004) ("The fact

14  that there was a conflict in the views of district court judges on the issue demonstrates that the

15  constitutionality of the regulations was not clearly established.").

16         Further, because of this disagreement, the Court cannot find that Defendants' conduct was

17  obviously illegal (much less overwhelmingly so) because "[t]he state of the law was at best

18  undeveloped." *Wilson*, 526 U.S. at 617.[8] This is particularly true given that the issue of Valley Fever at

19

20  _____

21  [8] In dismissing Plaintiffs' original complaint, the Court adopted the Magistrate Judge's finding that Defendants were not
    entitled to qualified immunity from Plaintiffs' Eighth Amendment claim. *See* Doc. 41 at 3. The Court agrees with the

22  Magistrate Judge's conclusion in the F&Rs that that holding was clearly erroneous. *See* Doc. 106 at 25. Further, the Court
    finds that following that conclusion as law of the case would work a manifest injustice. The Court notes that a visiting district

23  judge, relying on this Court's prior order in this case, recently found that former Governor Schwarzenegger and various
    PVSP and ASP officials were not entitled to qualified immunity from an African-American plaintiff's claim that his
    contracting Valley Fever while housed at PVSP violated his Eighth Amendment rights. *See Smith v. Schwarzenegger*, No.

24  07-cv-1547 SRB (PC), 2015 WL 106337, at *2 (E.D. Cal. Jan. 7, 2015). This further reinforces the Court's conclusion that
    the unsettled state of the law pertaining to Valley Fever cases within this district entitles Defendants to qualified immunity

25  from Plaintiffs' Eighth Amendment claim.

1  San Joaquin Valley prisons has been the subject of substantial litigation within this District,[9] yet no

2  "consensus of cases" has emerged. Although that litigation has shed some light on the issue, no authority

3  has "fleshed out 'at what point the risk of harm from [Valley Fever] becomes sufficiently substantial for

4  Eighth Amendment purposes." *Estate of Ford*, 301 F.3d at 1051 (quoting *Farmer*, 511 U.S. at 834 n.3)).

5  Accordingly, the Court GRANTS Defendants' MJP on Plaintiffs' Eighth Amendment claim because

6  Defendants have established that they are entitled to qualified immunity from the claim.

7  IT IS SO ORDERED.

8  Dated:   **September 28, 2015**          **/s/ Lawrence J. O'Neill**
                                            UNITED STATES DISTRICT JUDGE

---

[9] *See Hines*, 2015 WL 2385095, at *4 ("A Westlaw search of all federal decisions in the Ninth Circuit using the word string Valley Fever" returns about 420 responses with case filings beginning around 1976 . . . . Beginning in 2005, the frequency of case filings increases dramatically and the typical type of case changes dramatically. Even a casual inspection of the listings from cases commenced in the last ten years shows that the overwhelming majority involve claims against state or federal correctional institutions in what has been termed the hyper-endemic cocci zone of the southern San Joaquin Valley"); *Smith*, 2015 WL 3953367, at *3 (recognizing disagreement between judges of this Court concerning Valley Fever cases as of June 29, 2015).

14